ARROWSMITH *v.* STATE. *

(*Nashville.* December Term, 1914.)

1. CONVICTS. Trial. Pendency of prior sentence.

One under conviction and imprisoned in the penitentiary may be brought to trial and sentenced for another crime, whether charged to have been committed before or during such imprisonment. (*Post, pp.* 484, 485.)

Cases cited and approved: Thomas v. People, 67 N. Y., 218; People v. Majors, 65 Cal., 138; Henderson v. James, 52 Ohio St., 242; Rigor v. State, 101 Md., 465.

Code cited and construed: Secs. 6951, 7155, 7150 (S.).

Constitution cited and construed: Sec. 9, art. 1.

2. CRIMINAL LAW. Right to speedy trial. Pendency of prior sentence.

The rights of one under confinement for another crime to a speedy trial are not abridged or deferred until termination of his sentence. (*Post, pp.* 485-488.)

Cases cited and approved: State v. Drophy, 8 Ohio Dec., 698; State v. Stalmaker, 2 Brev. (S. C.), 44; In re Garvey, 7 Colo., 502; Dudley v. State, 55 W. Va., 472; State v. Keefe, 17 Wyo., 227; State v. Sims, 1 Tenn., 253.

Case cited and disapproved: Gillespie v. People, 176 Ill., 238.

3. CRIMINAL LAW. Constitutional rights. "Speedy trial."

A "speedy trial," within the constitutional guaranty, means a trial as soon after indictment as the prosecution can with reasonable diligence prepare for it, without needless delay, having in view its regulation and conduct, by fixed rules of law. (*Post, p.* 488.)

---

*The question of the right to put upon trial one undergoing imprisonment for another offense is discussed in a note in 41 L. R. A. (N. S.), 1095.

Arrowsmith v. State.

4. **CRIMINAL LAW.** Postponement of trial. Constitutional rights.

Where accused was convicted of forgery and confined in the penitentiary, and other untried cases of forgery against him were by order of the court, in his absence and without his consent, retired from the docket, until the expiration of his sentence, which occurred two years thereafter, such order operated as a denial of the right to a speedy trial guaranteed by Const., art. 1, sec. 9, and Shannon's Code, sec. 6951. (*Post, pp.* 488, 489.)

Cases cited and approved: Benton v. Com., 90 Va., 328; Jones v. Com., 114 Ky., 599.

---

## FROM GILES.

---

Appeal from the Circuit Court of Giles County.—W. B. TURNER, Judge.

T. M. PIERCE, J. M. HOWELL, and R. E. DOTSON, for appellant.

FRANK M. THOMPSON, attorney-general, for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

At the October term, 1911, of the circuit court of Giles county, there were eleven indictments pending against appellant Arrowsmith, seven of them for forgery. At that term he was put to trial on one of the indictments for forgery, convicted, and sentenced to serve a term of three years in the State penitentiary.

131 Tenn. 31

The other cases were continued at that term by consent and set for trial January 26, 1912.

Arrowsmith was incarcerated in accordance with the sentence in December, 1911, and at the January term, 1912, the record shows, as to the remaining cases, that "these causes were continued to the next term of this court"; the proof showing that the continuance was not at the instance of the accused.

At the October term, 1912, the record order, made in the absence of accused and without his consent, was as follows:

"Came the attorney-general for the State, and, it appearing to the court that defendant is serving a term in the penitentiary, it is considered by the court that said cases be retired from the docket until the expiration of said sentence."

It is disclosed by the record that in April, 1914, before Arrowsmith's term of service expired in June, 1914, the prosecuting attorney directed the warden of the penitentiary to send Arrowsmith to Giles county for the purpose of procuring from him a compromise judgment of conviction terminating the untried causes, and not for the purpose of trying any one of them. This effort at compromise failing because of the refusal of the accused to assent, he was returned to the penal institution, where he completed his term in June.

At the October term, 1914, he was put on his trial on another indictment for forgery, found guilty, and again sentenced.

When at this term a motion was made by the prosecuting attorney to reinstate four of the untried cases on the docket, the counsel for the defense filed written objections as follows:

"First, Because this court, at the October term, 1912, caused an order to be entered of record retiring said case from the docket, and there has been no further order made in said case restoring the same to the docket.

"Second. Because this court, when it retired said case from the docket, lost jurisdiction thereof and is without power or authority to further proceed.

"Third. Because said case has been delayed until now, and no effort has been made by the State to prosecute or bring this defendant to trial, thus denying him a speedy and public trial as guaranteed by the sixth amendment to the constitution of the United States, and section 9, article 1, of the constitution of the State of Tennessee, and in violation of section 6951, Shannon's Code of Tennessee."

The court sustained the motion of the attorney-general and restored said cases to the docket. To this action and ruling of the court the plaintiff in error excepted. Thereupon one of these forgery cases was reinstated on the docket and set for trial instanter, with the result above stated.

Following verdict, plaintiff in error filed a motion for discharge from custody in substantially the same terms as the motion above. This was overruled by the trial judge after oral evidence was heard in support of and in opposition to the motion.

On appeal to this court the same grounds have been made the bases of the errors assigned in behalf of plaintiff in error.

The constitution, in art. 1, section 9, provides that:

"In all criminal prosecution, the accused hath the right ·: . . in prosecutions by indictment or presentment (to) a speedy public trial, by an impartial jury of the county in which the crime shall have been committed."

By an accordant provision of the Code (Shannon), section 6951, it is stipulated:

"In all criminal prosecutions the accused is entitled· to a speedy trial, and to be heard in person and by counsel."

We have no statute which prescribes definitely the period within which an accused must as a matter of his right be brought to trial, in default of which he must be released; but by section 7155 it is provided that where the trial has not been postponed on his application, and he be not brought to trial at the next regular term of the court in which the indictment is triable, after the same is found, the court may order it to be dismissed, unless good cause to the contrary be shown.

By section 7250 it is declared that a conviction for any one offense is not a bar to a prosecution for any other public offense committed previously, not necessarily included in the offense for which the defendant was convicted.

There cannot be doubt that one under conviction and while imprisoned in the penitentiary may be brought to

the bar for trial and sentenced for another crime, wheth-
er charged to have been committed before or during
such imprisonment.   This practice has been followed
in this State and in this court, and many reported cases
sustain it.   *Thomas* v. *People,* 67 N. Y. 218; *People* v.
*Majors,* 65 Cal., 138, 3 Pac., 597, 52 Am. Rep., 295;
*Henderson* v. *James,* 52 Ohio St., 242, 39 N. E., 805, 27
L. R. A., 290; *Rigor* v. *State,* 101 Md., 465, 61 Atl., 631,
4 Ann. Cas., 719.

In the last-cited case it is said:

"The penitentiary is not a place of sanctuary, and an
incarcerated convict ought not to enjoy an immunity
from trial merely because he is undergoing punishment
on some earlier judgment of guilt.   Why should there
be a delay in bringing him to trial, on an indictment
pending against him, a convict who has not yet com-
pleted the service of a previous sentence?   No reason
can be suggested for such a delay in the case of a con-
vice adjudged guilty of some other offense and actually
in execution of a sentence thereunder, that does not ap-
ply equally to an individual who has been indicted and
had not yet been tried.   .   .   .   If the contention made
in the case at bar is sound, the arm of the criminal law
would be paralyzed—not a step could be taken towards
prosecuting him so long as the convict remained shel-
tered in the walls of the penitentiary.   That is not the
law.   The criminal court has jurisdiction to bring the
plaintiff in error before it   .   .   .   and to place him on
trial under the indictment there pending against him."

The right of the State to prosecute him is not abridged or delayed by the fact that the accused is in such confinement, and by parity of reasoning his rights to be tried and to a speedy trial are not deferred until his period of sentence has been served or terminated.

In only two reported cases, and in only one case decided by a court of last resort, is it held in accord with the State's contention in this case that the right to a speedy trial does not apply to a convict, and that not until his confinement is at an end may he be tried for the commission of another offense or invoke the constitutional guaranty of a speedy trial.

In *Gillespie* v. *People,* 176 Ill., 238, 52 N. E., 250, it is seemingly so ruled, but in an opinion that is lacking in convincing argument.

In *State* v. *Brophy,* 8 Ohio Dec., 698, one of the courts of common pleas of Ohio held that such a convict "was practically dead as a civilian, and before he could make this demand he must serve his sentence." Civil death has sometimes been imputed to convicts for life, but never, except in the cited case, so far as we have observed, to one incarcerated for a period less than life.

By a decided weight of authority the contrary rule is upheld. *State* v. *Stalmaker,* 2 Brev. (S. C.), 44; *In re Garvey,* 7 Colo., 502, 4 Pac., 758; *Dudley* v. *State,* 55 W. Va., 472, 47 S. E., 285; *State* v. *Keefe,* 17 Wyo., 227, 98 Pac., 122, 22 L. R. A. (N. S.), 896, 17 Ann. Cas., 170.

The reasons in support of this holding are well stated in the case of *State* v. *Keefe,* supra, and approve themselves to us:

"The purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment of a criminal prosecution and the anxiety attending the same; and hence an accused admitted to bail is protected as well as one in prison.   Moreover, a long delay may result in the loss of witnesses for the accused as well as the State, and the importance of this consideration is not lessened by the fact that the defendant is serving a sentence in the penitentiary for another crime."

Indeed, the importance of that consideration is accentuated by the fact of the accused's imprisonment. He is less able on that account to keep posted as to the movements of his witnesses, and their testimony may be lost during his continued confinement.   It would be a harsh construction of the clause, containing this guaranty, imbedded in our bill of rights, that would deny it application to those who stand most in need of it.

Holding against this insistence of the State, we turn to the inquiry whether appellant Arrowsmith, as one entitled thereto, has been denied a speedy trial within the meaning of the constitutional guaranty.

We have in this State but one decision on the question (*State* v. *Sims,* 1 Overt., 253), decided in 1807, under the constitution of 1796, which is said to be "the first case in which the right to a speedy trial in a criminal case found judicial determination in this country." It was there held that an accused, invoking the right given in the bill of rights to the citizen to a speedy pub-

lic trial, is entitled to his discharge if the State has ommitted to provide a public prosecutor to appear and prosecute; that the omission cannot render the provision of the constitution inefficient.

A "speedy trial," so guaranteed, means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious, or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused.

As we have seen, the orders entered on October 24, 1912, by which the several untried cases against Arrowsmith were "retired from the docket until the expiration of said sentence," were made in the absence and without the knowledge or consent of the accused, who was at the time an inmate of the State penitentiary, and without the knowledge or consent of his counsel.

The only cause for this action is that appearing in the face of the order:

"It appearing to the court that the defendant is serving a term in the penitentiary, it is considered by the court," etc.

The record discloses that no effort was made by the prosecution to put the accused on trial, though, confessedly, there was sufficient time and opportunity therefor. The fact that the defendant was then incarcerated was no legal excuse for the delay, as has been observed.

Arrowsmith was conditioned so that he could not personally demand that his own trial be proceeded with; and without the knowledge of either himself or his counsel the court in legal effect, through the order, continued the cases for approximately two years—needlessly and vexatiously. *Benton* v. *Com.*, 90 Va., 328, 18 S. E., 282; *Jones* v. *Com.*, 114 Ky., 599, 71 S. W., 643.

We hold that this operated to deny the accused the speedy trial contemplated in the constitutional provision.

No question is made by the State touching the manner in which the defendant raised in the lower court the question here considered, if indeed it could do so with any show of reason under the authorities.

Reversed, with judgment in this court for the release of appellant from custody.