**UNITED STATES of America**

v.

**Calvin J. REED.**

**Crim. No. 909–66.**

United States District Court
District of Columbia.
May 29, 1968.

Lawrence Lippe, Asst. U. S. Atty., for the United States.

Peter L. Truebner, Washington, D. C., for Calvin J. Reed.

## MEMORANDUM AND ORDER

YOUNGDAHL, District Judge.

On May 17, 1968, Calvin J. Reed, was before this Court for trial on a two-count indictment charging the unauthorized use of a motor vehicle and the interstate transportation of a stolen motor vehicle. As a preliminary matter, the defendant renewed his motion to dismiss the indictment for unnecessary delay under Rule 48(b) of the Federal Rules of Criminal Procedure and denial of his sixth amendment right to a speedy trial which had been denied by another Judge of this Court on April 26, 1968. A hearing was held before this Court out of the presence of the jury.

Because the issue here is one of speedy trial the chronology of events will be given in some detail. On January 20, 1966, it is alleged that the defendant took an automobile owned by Dennis K. Snyder from a parking lot in the District of Columbia. It is further alleged that on January 21, 1966, the defendant was in a car accident while driving the stolen car in Prince George's County, Maryland. As a result of this a United States Commissioner's warrant charging the offenses in this indictment was forwarded to the United States Marshal in Baltimore, Maryland, and the defendant was taken into custody by the Maryland authorities. On March 18, 1966, the defendant was tried on certain traffic offenses resulting from the accident on January 21 and a Maryland court sentenced defendant to one and one-half years. Defendant's sentence was later reduced by the appellate division of the Maryland court to one year and defendant was transferred to a penal institution in Jessup, Maryland. On April 23, 1966 the defendant was transferred to a penal institution in Hagerstown, Maryland.

On July 25, 1966 defendant was indicted in the District of Columbia in the case that is now before this Court. On August 5, 1966 the arraignment was held and when the defendant, who was in a Maryland institution, did not appear, a Bench Warrant issued. On August 11, 1966 this Bench Warrant was forwarded to the United States Marshal in Baltimore, to serve as the basis for a detainer. On January 26, 1967 defendant's one year sentence, with about two months credit for incarceration prior to imposition of sentence, expired. Due to an administrative mistake, apparently on the part of the Maryland authorities, the detainer was not honored and the defendant was released. Defendant then returned to a former address in the District of Columbia. On October 6, 1967 the United States Marshal's Office in the District of Columbia received the unexecuted Bench Warrant from the Maryland authorities explaining that the detainer apparently had not followed the defendant to the Hagerstown institution which released him. On March 23, 1968 defendant was arrested in the District of Columbia for assaulting a police officer.[1] On March 25, 1968 the defendant was informed, for the first time, that there was an outstanding indictment charging him with the unauthorized use. of a motor vehicle. Finally, on March 29, 1968 counsel was appointed and defendant was arraigned.

Therefore the indictment was six months subsequent to the alleged offense and it was twenty-six months between the alleged offense and the beginning of the trial. It was approximately fourteen months from the time the defendant was released by the Maryland authorities and the beginning of his trial.

In a case alleging the denial of a speedy trial the Court must consider: the length of the delay; the reasons for the delay; the diligence of the prosecutor, court and defense counsel;[2] and the reasonable possibility of prejudice resulting from the delay.

---

1. This charge was reduced to simple assault and the defendant was later acquitted.

2. See Hanrahan v. United States, 121 U.S. App.D.C, 134, 138–139, 348 F.2d 363, 367–368 (1965).

■■ The time factor is necessarily determined by the point at which the computation begins. While in some jurisdictions the computation does not begin until a formal charge or indictment has been filed, in this jurisdiction the entire period between the offense and trial must be considered.[3] In this case the defendant was indicted six months after his arrest by the Maryland authorities. This delay, although unfortunate, is not fatal to the Government's case.[4]

■ The next segment to consider is the approximately ten months between defendant's conviction in the Maryland Courts and the expiration of the Maryland sentence. The Government argues that the delay in bringing the defendant to trial was his fault, since it was caused by his imprisonment in Maryland. Our Court of Appeals, however, in dismissing a federal indictment against a defendant whose trial had been delayed six years because of his imprisonment in New York stated:

"We think his imprisonment there does not excuse the Government's long delay in bringing him to trial here, in the absence of a showing that the Government, at a reasonably early date, sought and was unable to obtain his return for trial." [5]

Thus imprisonment in a state institution does not necessarily justify delay in bringing a defendant to trial on Federal charges.

Various factors are relevant to the consideration of a speedy trial claim in this context. Clearly the most important single factor is the length of the prospective incarceration in the other jurisdiction. Other factors, however, which bear significantly on this issue include: the diligence of the Government in attempting to arrange for temporary extradition from the other jurisdiction; [6] the difficulty and cost of transporting the defendant in for trial and then back to the other jurisdiction; [7] the steps taken to minimize the possibility of resulting prejudice to the defendant; and the age, education, intelligence and mental and physical condition of the defendant. In this case the defendant served ten months in Maryland institutions, six months of which was subsequent to the indictment. In Stevenson v. United States, 107 U.S. App.D.C. 398, 278 F.2d (1960), our Court of Appeals upheld a conviction where the defendant had been tried after spending sixteen months in the Maryland House of Correction.[8] More recently the Court of Appeals for the Second Circuit, which assumed that the other jurisdiction would have made the defendant available for trial, stated that:

" * * * we do not think it unreasonable for the Government not to put to immediate trial a person having at the most 10 or 11 months remaining to be served on a sentence in a state prison in another state." [9]

---

3. See e. g., Mann v. United States, 113 U.S.App.D.C. 27, 29–30, n. 4, 304 F.2d 394, 396–397, n. 4 (1962).

4. See Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312 (1967) where the Court upheld a four and one-half month delay between arrest and return of the indictment.

5. Taylor v. United States, 99 U.S.App.D.C. 183, 185, 238 F.2d 259, 261 (1956). See also, Pitts v. North Carolina, 393 F.2d 182 (4th Cir. 1968) (Sobeloff, J.).

6. See Stevenson v. United States, 107 U.S. App.D.C. 398, 399, 278 F.2d 278, 279 (1960).

7. See United States v. Banks, 370 F.2d 141, 144 (4th Cir. 1966) ; But see, Comment, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 Yale L.J. 767, 773 (1968).

8. In this case the defendant was indicted on December 3, 1957, for the crime of false pretenses allegedly committed by him on October 19, 1957. He was incarcerated in Maryland from late 1957 until released March 6, 1959 and was tried and convicted in the District of Columbia on April 6, 1959.

9. United States v. Simmons, 338 F.2d 804, 807–808 (2d Cir. 1964) ; See also United States v. Banks, 370 F.2d 141 (4th Cir.

The Government in this case made no effort whatsoever to have the defendant temporarily released by the Maryland authorities for the purpose of trial. It should be noted that the procedural problems in achieving this are no longer as difficult as they were in the past.[10] While the difficulty and cost of transporting a defendant in for trial and then back to the other jurisdiction may be a significant factor in some situations it is an insubstantial one between the District and neighboring Maryland and Virginia.

Moreover, no steps were taken to minimize the possibility of resulting prejudice to the defendant. The defendant was not personally served with a copy of the indictment nor was he notified when the detainer lodged.[11] In fact until March 25, 1967, there is no indication that the defendant was aware that any charges were pending against him in the District. Clearly there can be no waiver of the right to a speedy trial where the defendant has no knowledge of the pending charge or where he is powerless to assert his right because of imprisonment, ignorance and lack of legal advice.[12]

If counsel had been appointed for the defendant when he was arraigned on August 5, 1966, we might not be faced with this problem now. Counsel could not only guard against the administrative "slip-up" that occurred in this case, but would also be in the best position to apprise the Court of the possible prejudice to the defendant which trial delay might cause. When the other jurisdiction involved is Maryland or Virginia the appointment of District of Columbia counsel who live in these areas would seem to be a workable procedure.

While the procedure employed here leaves much to be desired it alone might not have justified dismissal of the indictment if the defendant had been tried when he was released by the Maryland authorities on January 26, 1967. But due to an administrative mistake by the Maryland authorities the detainer was not honored and the defendant, still unaware of the charges against him, returned to the District. Defendant was living in the District for another fourteen months before he was picked up on another charge and the previous mistake was noticed. During this period no significant effort was made to locate the defendant in the District.[13] Thus the twenty-six month delay between arrest and trial was due to negligence on the part of the Government.[14]

1966) where a ten month incarceration in another jurisdiction was held not to deprive the defendant of his constitutional right to a speedy trial.

10. See Comment, The Detainer System and the Right to a Speedy Trial, 31 U. Chi.L.Rev. 535 (1964); Note, 57 Colum. L.Rev. 846, 865 (1957); ABA Project on Standards for Criminal Justice, Report on Standards Relating to Speedy Trial, pp. 32–40 (1968).

11. See the ABA Project on Standards for Criminal Justice, Report on Standards Relating to Speedy Trial, § 3.1 (1968), which requires that upon a prosecutor's filing a detainer, the prisoner be advised of the charge and of his right to demand a trial; See also Judge Sobeloff's critical discussion of the use of Detainers in Pitts v. North Carolina, 395 F.2d 182, (4th Cir. 1968).

12. See Pitts v. North Carolina, 395 F.2d 182, (4th Cir. 1968).

13. Marshal Dooley, warrant squad supervisor of the Marshal's office, testified that he has six men under him on the warrant squad and that each of them has 60–100 warrants to handle in addition to their other duties. This is just another example of the serious shortage of supporting staff which severely handicaps this Court and contributes substantially to its calendar problems.

14. See Hanrahan v. United States, 121 U.S.App.D.C. 134, 139, 348 F.2d 363, 368 (1965) where the Court noted that if the delay resulted "from deliberate, *or at least negligent, actions on the part of the prosecutor* and the prosecutor fails to show 'that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'" then the indictments must be dismissed. (Emphasis supplied).

This Court next has to determine if defendant has been prejudiced by this delay. Defendant's attorney told the Court that he had spent considerable time with the defendant, but that the defendant remembered absolutely nothing about the alleged offense and that the attorney was at a loss as to how to defend the case. To substantiate this, defendant was called to the stand and the Court and both counsel examined him at length. Defendant is a twenty year old negro from a broken home who quit school at sixteen after failing numerous times. Defendant was unable to remember anything about the car he was in at the time of his arrest, and, in fact, did not even remember anything about his arrest. There were also numerous other areas of defendant's life over the past three years about which he had little or no memory of people, places or events.

Previous to defendant's taking the stand Dr. David A. Lanham, Chief of the Legal Psychiatric Division, examined the defendant at the Court's request. Dr. Lanham also sat in the courtroom while the Court and counsel examined the defendant. The Court then called Dr. Lanham to the stand and he was examined by both counsel and by the Court. The Doctor testified that in his opinion the defendant had at best a 65–70 I.Q. and that he might even be mildly mentally defective. He further explained that the more the defendant was pressed the more confused he got. He described the defendant as a semi-literate individual who because of cultural and social deprivation has made only a marginal adjustment to his environment. The Doctor stated that it was his opinion that the defendant was not consciously lying and that his demeanor on the stand was not an act.[15]

Dr. Lanham in answer to questions from the Court stated that it was his opinion that the defendant was competent to stand trial. He further stated that he expected that if a report as to competency was requested from St. Elizabeth's Hospital they would reach the same conclusion.[16] This Court feels that while this is a close case on the competency point, the defendant is competent to stand trial.[17]

This, however, does not dispose of the issue of prejudice due to the delay in bringing defendant to trial. The Government argues here that there was some evidence that defendant was having trouble remembering anything soon after the alleged crime and that therefore his lack of memory was not the result of the trial delay. The premise of this argument is that the defendant's memory or lack of memory is a constant. This, however, is rarely the case with this type of individual. These individuals often have interludes of memory and non-memory depending upon the pressures they are under and whether events are brought to their attention which trigger their memory of other events that the individual associates together. To say that the defendant did not remember something two years ago that he does not remember now is not to say that he did not remember some time during the interval. If the defendant had counsel during this period and had been apprised of the charges against him this case might assume a different posture today.

Moreover, Dr. Lanham agreed with the Court that the passage of time affects the memory of a person like this defend-

15. The Maryland Police Officer who made the original arrest of defendant on January 20, 1966, testified that defendant's demeanor was the same then as it was before this Court and that he personally agreed with the Doctor's evaluation as to defendant's intelligence.

16. Before being sentenced by the Maryland Court this defendant was sent to Spring Grove for mental observation. Defendant was later found competent to stand trial by the Maryland Court.

17. But cf, United States v. Wilson, 129 U.S.App.D.C. ——, 391 F.2d 460 (1968) (Case remanded to determine whether defendant was incompetent to stand trial because of his admitted amnesia due to brain damage).

ant to a much greater extent than it would a person of normal intelligence.

In conclusion this Court finds that the twenty-six month delay in this case was due to the negligence of the Government and that as a result the defendant was prejudiced. Therefore this Court holds that Calvin J. Reed has been deprived of his right to a speedy trial guaranteed by the Sixth Amendment and it is hereby ordered that the indictment in Criminal No. 909–66 be dismissed.[18]

---

18. See, e. g., Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956); United States v. Chase, 135 F.Supp. 230 (N.D.Ill.1955); Petition of Provoo, 17 F. R.D. 183 (D.Md.), aff'd mem., 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).