**Harold L. CATES, a/k/a John M. Williams, a/k/a Alford L. McNeil, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11122.**

District of Columbia Court of Appeals.

Argued Sept. 20, 1977.

Decided Nov. 3, 1977.

---

Christopher G. Hoge, Washington, D. C., appointed by this court, for appellant.

James F. Hibey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, GALLAGHER and MACK, Associate Judges.

KERN, Associate Judge:

■ A jury found appellant guilty of assault with a dangerous weapon (D.C. Code 1973, § 22–502) and assault with intent to commit robbery (D.C. Code 1973, § 22–501).[1] On appeal he argues that the trial court erred (a) when it denied his motion to dismiss the indictment for lack of a speedy trial, and (b) when it denied his motion to suppress the complaining witness' show-up identification testimony.[2] We disagree and affirm the convictions.

■ Manifestly, the right to a speedy trial is a fundamental constitutional right.[3] The Supreme Court has warned, however, that it is "impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). Appellant's argument, therefore, must be evaluated according to the *Barker v. Wingo* four-pronged balancing test, which weighs: (1) the length of the delay; (2) the reasons for the delay; (3) the assertion of the right by the defense; and (4) any resulting prejudice to the accused. *Id.* at 530, 92 S.Ct. 2182.

■ In this jurisdiction, it has been held that a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial. *Branch v. United States*, D.C.App., 372 A.2d 998, 1000 (1977). *See United States v. Mack*, D.C.App., 298 A.2d 509, 511 (1972); *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). After one year, a heavy burden shifts to the government to justify the delay. *Branch v. United States, supra,* 372 A.2d at 1000. In the instant case, appellant and a companion were arrested within minutes of an attempted robbery of a taxi driver on May 27, 1971, but appellant was not brought to trial for the crime until April 30, 1976.[4] Clearly, a lapse of fifty-nine months between arrest and trial preponderates in favor of the appellant. Length of time is not, however, the sole determinant in judging whether a defendant has been denied a speedy trial. *See Barker, supra* 407 U.S. at 521–22, 92 S.Ct. 2182.

As to the second prong of the *Barker* analysis, the reasons for the delay, the record in the instant case reveals an unusual

1. Appellant was found not guilty on charges of assault with intent to commit robbery while armed (D.C. Code 1973, §§ 22–501, –3202) and carrying a dangerous weapon (D.C. Code 1973, § 22–3204).

2. Appellant's second argument, that the on-the-scene identification was unreliable because the complaining witness' observation of appellant and a companion was minimal, is without merit. Initially, it should be noted that the critical issue in suppression of show-up identification testimony concerns undue suggestivity or other police misconduct rather than witness' reliability. *See Brown v. United States*, D.C.App., 349 A.2d 467, 468 (1975). There was no police misconduct in this case. In addition, we find no substantial likelihood of misidentification. *See Neal v. Biggers*, 409 U.S. 188, 201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The witness testified that he "got a good look" at the two men when they entered his cab, and he positively identified them when they were brought before him only four or five minutes after the attempted robbery. Although the witness based his identification "mostly [on] what they had on," he testified that he also recognized them by their bodily and facial characteristics. Moreover, he identified sunglasses, a jacket, and a pistol which the police found near the suspects as ones which he had seen during the robbery.

3. The Supreme Court in *Klopfer v. North Carolina*, 386 U.S. 213, 223–26, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), held that the Sixth Amendment right to a speedy trial is "fundamental" and is imposed on the states through the due process clause of the Fourteenth Amendment. *See Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Dickey v. Florida*, 398 U.S. 30, 36–38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 375, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

4. The other suspect pled guilty to assault with a dangerous weapon in the United States District Court for the District of Columbia on July 13, 1972.

sequence of events. At the time of the arrest, appellant gave his name to the police as Alford L. McNeil. He was arraigned under that name and released on his own recognizance. Thereafter, he failed to appear at the preliminary hearing on the case, and on October 5, 1971, a federal grand jury returned an indictment charging Alford L. McNeil with assault with intent to commit robbery, and related charges.[5]

Meanwhile, appellant fled to North Carolina and was arrested and imprisoned there on different charges. Throughout the proceedings in that case, appellant used the name of John Merrick Williams.

In early December, 1975, District of Columbia authorities located appellant in the North Carolina prison through the use of fingerprints.[6] At his subsequent arraignment, appellant asserted that he was not the person who had been arrested in 1971, but an additional fingerprint examination revealed that the prints belonged to the same person. Later, when the prosecution sought a court-ordered modification of the indictment to correct appellant's first name, appellant would not acquiesce in this amendment. The government therefore submitted the case to the grand jury for reindictment, and a new indictment was issued on April 6, 1976, in the name of

Harold L. Cates, a/k/a Alford McNeil, a/k/a John M. Williams.

■ Appellant admits that his own actions contributed to the prosecution's delay in bringing him to trial (Brief at 6). He argues, however, that the government failed to make good-faith efforts to locate him. Specifically, he contends that if the prosecution and police had earlier invoked the assistance of the Federal Bureau of Investigation, he would have been traced to the North Carolina prison where he was serving his sentence. In addition, he cites cases which hold that imprisonment in other jurisdictions does not excuse delay in bringing a defendant to trial. We find the cases to be distinguishable[7] and the argument to be without merit.

We recognize that the Supreme Court has cited negligence and over-crowded courts as a "neutral reason" for delay which must nonetheless be assessed against the government but which "should be weighted less heavily" than a deliberate attempt to delay the trial. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182. *See Strunk v. United States,* 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). An understaffed prosecutor's office that is unable rapidly to follow up on fugitives (as the government admitted was the case here) may be a factor which could

5. Approximately a year after the crime, the true Alford McNeil was arrested on a bench warrant, but he was released when the mistake was discovered.

   Subsequently, the District of Columbia Superior Court gained jurisdiction over appellant's case following the passage of the District of Columbia Court Reform and Criminal Procedure Act of 1970 (Reorganization Act), Pub. L.No. 91–358, 84 Stat. 473, July 29, 1970. A Superior Court grand jury returned an indictment on November 1, 1972, in the name by which appellant had been known during his residence in the District of Columbia: Howard Cates, a/k/a Alford McNeil. (It was later learned that the first name used in this indictment was erroneous, for appellant had been known as Harold Cates.)

6. Appellant was found after the United States Attorney's Office, in conjunction with the Metropolitan Police Department and the Federal Bureau of Investigation, began a program in May, 1975, to trace fugitives from the District of Columbia.

7. Appellant discusses *Taylor v. United States,* 99 U.S.App.D.C. 183, 238 F.2d 259 (1956); *United States v. Reed,* 285 F.Supp. 738 (D.D.C. 1968); *Coleman v. United States,* 142 U.S.App. D.C. 402, 442 F.2d 150 (1971); *Smith v. Hooey, supra; Dickey v. Florida; Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); and *United States v. Canty,* 152 U.S. App.D.C. 103, 469 F.2d 114 (1972). These cases are distinguishable from the instant case, for in each of them the prosecuting jurisdiction was aware of the defendant's location but failed nonetheless to bring him to trial. In none of these cases was the defendant incarcerated under any name other than the one by which he was known in the jurisdiction in which the charges were pending. Moreover, in *Taylor v. United States* and *United States v. Reed,* there was the additional factor that the defendants did not even know that they were under indictment for the charges on which they were later brought to trial. *Taylor,* 99 U.S. App.D.C. at 185, 238 F.2d at 261; *Reed, supra* at 739.

be weighed against the government. It is, however, doubtful that the government can be considered to have been negligent in the *instant case*. The prosecution obtained an indictment for Alford McNeil and located and arrested the true Alford McNeil within a reasonable length of time. Subsequently, the government sought swift reindictment each time it learned of appellant's various names.

Even if we were to assume *arguendo* that the government was negligent, in this case appellant's own actions more than counterbalanced the weight to be accorded any presumed inefficiency on the part of the prosecution. Appellant gave a false name when he was arrested; he became a fugitive from the District of Columbia; in order to conceal his true identity from law enforcement officials, he used another name when he was arrested in North Carolina; and, although he was paroled for approximately eleven months in 1973, he made no effort to return to the District to clear up the pending charges. Courts have held that "[i]t is well established that where the defendant's unlawful flight or hiding out is the reason for the delay in his trial, he is held to have waived his right to a speedy trial." *United States v. Judge*, 425 F.Supp. 499, 502 (D.Mass.1976), *citing United States v. Cartano*, 420 F.2d 362, 364 (1st Cir.), *cert. denied*, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); *Dickey v. Florida*, 398 U.S. 30, 48, 90 S.Ct. 564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); 57 A.L.R.2d 318; Speedy Trial Act, 18 U.S.C. § 3161(h)(3) (1975). *See also United States v. Thor*, 512 F.2d 811, 815 (5th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975). Thus, appellant's fugitivity and his use of three names during the period between arrest and trial must be given considerable weight in determining the causes for the delay of his trial.

The defendant's assertion of his right to a speedy trial is the third critical factor in the *Barker* analysis. Appellant argues that his failure to demand a trial in the District of Columbia while he was a prisoner in North Carolina should be given little weight. The Supreme Court has emphasized that although failure to demand a speedy trial is not a waiver of that right, a failure to assert the right will, however, "make it difficult for a defendant to prove that he was denied a speedy trial." *Barker, supra* 407 U.S. at 532, 92 S.Ct. at 2193. *See also United States v. Canty*, 152 U.S.App. D.C. 103, 114, 469 F.2d 114, 125 (1972). In the instant case, although there was ultimately a request for a speedy trial, appellant's actions were inconsistent with any genuine interest in an early trial. Appellant used three names in order to avoid being found. When he was transferred to the District of Columbia, he denied being the same person who had been arrested in 1971, thus requiring the government to perform a fingerprint examination to prove that he was, indeed, that same individual. Even after requesting a speedy trial, appellant in March 1976, refused to consent to a modification of the indictment concerning his first name (by which the incorrect name of Howard Cates would be changed to Harold Cates), thus forcing the government to ask the grand jury for a third indictment against him. In light of these actions, appellant's failure to assert his right to a speedy trial until after he had been located and returned to the District of Columbia must be balanced against appellant.

We find that the fourth factor in the *Barker* analysis, prejudice to the defendant, was not present in this case. The Supreme Court identified three interests of defendant which the speedy trial right was designed to protect:

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. [*Barker v. Wingo, supra* 407 U.S. at 532, 92 S.Ct. at 2193.]

In this case, appellant was not incarcerated in this jurisdiction during the period of which he complains, and he has conceded

that his defense was not impaired in any concrete manner.[8] If appellant suffered any anxiety and concern because of the delay between arrest and trial, we do not find these factors to be chargeable to the government.

In applying the four relevant factors to the facts in the *Barker* case, the Supreme Court held that Barker had not been deprived of his due process right to a speedy trial, despite a delay between arrest and trial of over five years. The Court's ultimate conclusion is equally applicable to this case:

> More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial. . . . [T]he record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried. [*Barker v. Wingo, supra* at 534–35, 92 S.Ct. at 2194.]

Cates, like Barker, tried to avoid coming to trial, and it was only after he lost "his gamble" that he began to object to the delay. *Id.* at 535, 92 S.Ct. 2182. We hold that the appellant has not been deprived of a speedy trial.

*Affirmed.*

---

**8.** Appellant states (Brief at 16):

While no prejudice was incurred as a result of the missing witnesses ([the codefendant] was located and interviewed by defense counsel after the motion hearing but prior to trial), and while the nature of the defense in this case, that of intoxication, was not of the sort that would be severely hampered by a loss of memory there is always the possibility that something was overlooked, that an important detail was forgotten by a witness, either for the government or for the defense, and such a possibility would surely increase with the passage of time.