**STATE of Tennessee, Appellee,**

v.

**Mack WALLACE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 19, 1980.

Permission to Appeal Denied by the Supreme Court Jan. 26, 1981.

Sylvia Ford Brown, Asst. Atty. Gen., Nashville, Daniel W. Cook, Asst. Dist. Atty. Gen., Waverly, for appellee.

Anthony L. Sanders, Waverly, for appellant.

OPINION

DAUGHTREY, Judge.

Because of a delay of over two years between the date of Mack Wallace's indictment in this case and the date he was brought to trial, a delay which was caused by the fact that he was "lost" in the Tennessee correctional system, the judgment of conviction against Wallace must be reversed and the case dismissed for denial of his right to a speedy trial under the Sixth Amendment to the United States Constitution and under Article I, Section 9 of the Tennessee Constitution.

The defendant was indicted by the Humphreys County Grand Jury on August 1, 1977, for an offense alleged to have occurred on April 8 of that year. In September 1977, Wallace was sent to the state penitentiary to serve a sentence imposed for an unrelated conviction in Giles County, Tennessee. Within a month after arriving at the prison, he wrote his court-appointed attorney, requesting a trial on the Humphreys County charge as soon as possible. He never received a response from his lawyer, a fact which the attorney now concedes. Wallace testified that he did not pursue the matter further, because he assumed from his lawyer's failure to communicate with him that the charges had been dropped.

Apparently no Humphreys County detainer was ever filed against Wallace, for he was released on parole on August 2, 1979, and was permitted to go home to Chicago, Illinois. There he later applied for a special parolee's permit to visit his grandmother out-of-state, and was informed at that time of the Humphreys County charges still pending against him. Wallace waived extradition and was returned to Tennessee in September, 1979.

Ted Tarpley, a law enforcement official from Humphreys County, testified at a pretrial hearing that after the indictment was returned against Wallace, he picked up the defendant in August 1977 at the Giles

County Jail and took him to Humphreys County for arraignment; he later returned Wallace to Giles County. Tarpley said that he asked the Giles County Sheriff to "hold" Wallace, but was informed a month later that the defendant had been convicted of the Giles County charge and was being transferred to the state prison in Nashville. Tarpley testified that he then telephoned the Prison and told "an investigator" there that Wallace was the subject of charges in Humphreys County. Significantly, however, there is no evidence that a written request or formal detainer was ever filed at the state prison in Nashville, or with any other state corrections official. Tarpley said that in January, 1978, he spoke with a deputy warden at the state penitentiary and learned that Wallace was no longer confined at that institution, and that the prison official "couldn't find him anywhere." He made no further inquiry concerning Wallace's possible incarceration, but assumed instead that the defendant had been released from custody. Tarpley thereupon filed a wanted notice with the National Crime Information Center.*

In fact, Wallace had been transferred from the main prison in Nashville to a regional facility at Fort Pillow, Tennessee, in December 1977, where he remained in confinement until his release on parole in August 1979. Unbeknownst to Wallace, his case was ordered "stricken" from the Humphreys County court docket in December 1978 "on default of the defendant." It was not "reinstated" until September 1979, upon his return from Chicago.

The formal order of reinstatement was actually preceded by five days by the defendant's motion to dismiss for lack of a speedy trial. That motion was denied, and on October 2, 1979, Wallace was tried on a forgery charge, convicted, and sentenced to one to three years imprisonment. He now appeals that conviction, raising multiple issues for our consideration. Because we find that Wallace's right to a speedy trial

was denied him, we must reverse on that basis, and discussion of the other questions brought on appeal therefore becomes unnecessary.

The leading Tennessee case in the area of a criminal defendant's right to a speedy trial is *State v. Bishop,* 493 S.W.2d 81 (Tenn.1973). *Bishop* applied the four-pronged test developed by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in evaluating such a claim. We have conducted a step-by-step analysis of the instant case in the context of the *Barker-Bishop* guidelines, as follows:

■ 1) LENGTH OF THE DELAY. As has been noted above, defendant Wallace was tried in October of 1979, 26 months after he was indicted. The *Bishop* Court noted that a delay of a little more than two years in that case was not, without more, *per se* violative of the defendant's rights. *Bishop, supra,* 493 S.W.2d at 85. However, it is clearly sufficient to trigger an inquiry into the remaining three factors for consideration under the *Barker-Bishop* guidelines.

■ 2) REASON FOR THE DELAY. On the face of the record, the reason for the lengthy delay in Wallace's case was the Tennessee Department of Correction's inability to locate him upon Humphreys County official Ted Tarpley's request. Tarpley testified that he called the deputy warden at the state prison "a couple of times" to find out whether Wallace was on probation, but never received any information in response to his inquiry.

In its brief, the State maintains that the prosecution "made a diligent effort to obtain custody of the defendant." We disagree. According to the American Bar Association Project on Minimum Standards for Criminal Justice, Speedy Trial § 3.1(a) (Approved Draft, 1968):

> If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a pe-

---

* It was this NCIC notice which ultimately resulted in Wallace's detention in Chicago in 1979 and his return to Humphreys County.

nal institution of that or another jurisdiction, he must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

No written detainer was filed with the Tennessee Department of Corrections. Nor was any effort made to follow up on Tarpley's abortive inquiry into Wallace's probation or parole status.

Other jurisdictions have faced similar cases in the speedy trial context. Perhaps most nearly on point is the case of *United States v. Reed*, 285 F.Supp. 738 (D.C.D.C. 1968). There the defendant was incarcerated in Maryland on an unrelated charge. Maryland officials received a request from the District of Columbia prosecutor to hold the defendant for trial, and they negligently failed to file a detainer against Reed at the state facility. As a result his trial was delayed 26 months, occurring only after his release and rearrest on still another unrelated charge. The District of Columbia court in *Reed*, noting that imprisonment in another institution did not justify the delay in bringing the defendant to trial, held that "there can be no waiver of the right to a speedy trial where the defendant has no knowledge of the pending charge or where he is powerless to assert his right because of imprisonment, ignorance and lack of legal advice." 285 F.Supp. at 741. The court went on to hold that the delay in bringing Reed to trial was not justified by the "administrative 'slip-up'" which resulted in the failure to file a detainer against him in Maryland prior to his release on parole, that "no significant effort" had been made by District of Columbia officials to locate him thereafter, and that the 26 month delay was therefore attributable to negligence on the part of the government. The defendant's conviction was therefore reversed and the charges against him dismissed.

In *People v. Powell*, 2 Ill.Dec. 558, 43 Ill.App.3d 934, 357 N.E.2d 725 (1976), the defendant was indicted by the Peoria County Grand Jury while serving time in an Illinois prison on an unrelated charge. Twenty-two months after indictment, Powell was released on parole. No detainer had been lodged with Illinois correctional authorities by the Peoria County prosecutor's office. One month after his release on parole, some 23 months after indictment, the defendant was arrested on a misdemeanor charge, and at that time it was discovered that an outstanding warrant from Peoria County existed. Two years after indictment, Powell's motion for discharge based upon Illinois' speedy trial statute was granted by the trial court.

The Appellate Court of Illinois affirmed, stating in part:

We accept the People's statement that they did not know where the defendant was, but based upon the record in this case the People should have known.... The burden was on the prosecuting authorities of Peoria County to keep track of and if necessary trace the whereabouts of the defendant so as to provide him with a prompt trial.

*Powell, supra,* 2 Ill.Dec. at 560, 357 N.E.2d at 727.

In *Commonwealth v. Collins,* 266 Pa.Super. 340, 404 A.2d 1320 (Pa.Super.1979), the Court held that an 18 month delay between the issuance of an arrest warrant and the arrest of the defendant was sufficiently violative of Pennsylvania's speedy trial statute to dictate his discharge. Despite the fact that the defendant had a police record and was on probation, no effort was made by police to secure information or cooperation from the probation and parole offices. The Court held that several ineffectual investigatory efforts which were made by the police did not meet the State's standard of "due diligence."

In *Turner v. State,* 378 So.2d 1173 (Ala. Cr.App.1979), *cert. denied* 378 So.2d 1182, a 25 month delay between indictment and trial was attributed by the court to the action (and inaction) of Russell County, Alabama, officials. They had been notified, five months after Turner was indicted, that

he was incarcerated in Georgia, but made no effort to gain custody for another 13 months. An incorrect extradition form was then sent to Georgia officials, who refused to honor it. Five months later, the proper form was sent. The defendant was finally tried and convicted over two years after his indictment. The judgment was overturned by the Alabama court, which found a violation of Turner's state and federal constitutional rights to a speedy trial.

Tennessee courts have on at least two occasions considered cases in which a defendant, while imprisoned on another charge, alleged that his speedy trial right had been violated. In *Arrowsmith v. State,* 131 Tenn. 480, 175 S.W. 545 (1915), the defendant was tried on one of 11 indictments pending against him in Giles County. He was convicted of forgery and sentenced to three years in the state penitentiary. The trial judge later ordered the remaining cases retired from the docket "until the expiration of [Arrowsmith's] sentence." Shortly before the expiration of the sentence, the prosecuting attorney attempted to plea bargain the rest of the cases away, but the defendant would not agree. Thus Arrowsmith was put on trial once more and was again convicted of forgery, the trial taking place three years after the original indictment.

When the prosecuting attorney attempted to revive and try four more of the cases, the defendant appealed an adverse ruling by the trial judge to the Tennessee Supreme Court, on the grounds that his rights to a speedy trial under the State constitution and under State law had been violated.

The Court held that "[t]he fact that the defendant was incarcerated was no legal excuse for the delay." Arrowsmith was found to have been denied his right to a speedy trial under the state constitution because the State made no effort to place him on trial "though, confessedly, there was sufficient time and opportunity therefor." A speedy trial was defined as "a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious, or oppres-

sive delay." *Arrowsmith, supra,* 131 Tenn. at 488, 175 S.W. 545.

In the other case, *Wright v. State,* 218 Tenn. 610, 405 S.W.2d 177 (1966), the defendant was indicted in Tennessee and then permitted by the Tennessee governor to be extradited to Kentucky. Wright was convicted of unrelated crimes in Kentucky, and was not sought by Tennessee until the expiration of his Kentucky prison sentence. He was then brought back to Tennessee and tried, some 33 months after indictment. The *Wright* court quoted from *Arrowsmith,* and held that the defendant's right to a speedy trial under the state constitution had been violated. The State could have obtained and tried the defendant, the court said, but it did not.

Moreover, this Court in a recent case found that delays of 18 months between the offense and the forgery presentment and an additional six months between the presentment and the first court appearance of the defendant, who was incarcerated in the Tennessee Prison for Women on unrelated charges for at least a portion of that time, were violative of her right to a speedy trial when combined with the State's lack of explanation for the delays, an inference that the defendant had made an effort to assert her speedy trial right, and prejudice to the defendant in the form of jeopardized work release status. *State of Tennessee v. Wanda Lou Baker,* Tennessee Court of Criminal Appeals at Knoxville, November 8, 1979.

It is clear from the above authorities that delays between indictment and trial which are occasioned by actions of members of the executive branch of government in general, and by the prosecuting attorney or members of the Department of Corrections in particular, must be considered the responsibility of the State. *See generally State v. Bishop, supra,* 493 S.W.2d at 84, in which the Tennessee Supreme Court quoted with approval the concurring opinion of Mr. Justice Brennan in *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). In that opinion, it was noted that:

... a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is "purposeful or oppressive," is unjustifiable.... The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin. A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials. Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it was unnecessary.

398 U.S. at 51–52, 90 S.Ct. at 1575–76 (Brennan, J., concurring; citations and footnote omitted).

In *Dickey* the concurring justices further noted that negligent delay has been held to violate the Speedy Trial Clause, citing *Hanrahan v. United States,* 348 F.2d 363 (D.C. Cir.1965), involving a delay occasioned at least in part by a change of venue from Puerto Rico to the District of Columbia, and *United States v. Reed, supra,* involving the failure of corrections officials to file a requested detainer against a previously incarcerated defendant. *Id.* at n. 17. An additional consideration in both *Hanrahan* and *Reed* was the provision in the Federal Rule of Criminal Procedure 48(b) giving the federal courts discretion to dismiss an indictment if there has been "unnecessary" delay in prosecution. This same authority is granted the Tennessee courts by virtue of our parallel provision in Tennessee Rule of Criminal Procedure 48(b):

> If there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, presentment, information or complaint.

■ This court has previously recognized three categories into which a delay between indictment and trial might fall: (1) "deliberate attempt to delay the trial in order to hamper the defense," a reason for delay which the court said "should be weighed heavily against the government"; (2) "a more neutral reason such as negligence or overcrowded dockets"; and (3) a "valid reason, such as a missing witness," which "should serve to justify appropriate delay." *Farr v. State,* 506 S.W.2d 811, 814 (Tenn.Cr. App.1974). We conclude that in dealing with the second category, that is, with a question of negligent delay, Tennessee law requires a determination of the *necessity* of that delay, or, in the language of *Dickey,* whether it was "reasonably avoidable." *Dickey v. Florida, supra,* 398 U.S. at 52, 90 S.Ct. at 1576. Thus, delay such as that involved in this case can be distinguished from a delay caused by an unavoidable backlog of "cases that have been in process longer than the case delayed." *Id.* at 52, 90 S.Ct. at 1576; *see also Farr v. State, supra; Tillery v. State,* 565 S.W.2d 509 (Tenn.Cr. App.1978). Measured against this standard, the 26 month delay in this case cannot be said to be necessary. It was the product of "human error" on the part of corrections officials which, reasonably speaking, was not unavoidable. As one court has recently noted, where delay is "the product of sheer bureaucratic indifference [that factor] weighs heavily against the government." *United States v. MacDonald,* 632 F.2d 258, 262 (4th Cir.1980).**

■ 3) ASSERTION OF THE RIGHT. The State asserts in its brief that "[t]he defendant never made a formal demand for a speedy trial." The record reflects, however, that Wallace did make such a formal demand soon after his return to Tennessee from Illinois. A hearing was held pursuant to his motion.

Furthermore, shortly after the defendant's original incarceration in 1977, he notified his lawyer that he wished to have the pending charges promptly disposed of. We

** *Rev'd on other grounds,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

cannot condone the subsequent inaction of defense counsel, but we note that (i) the defendant never heard another word about the charges until he was picked up in Chicago two years later; (ii) if the defendant ever consulted with prison authorities, he would have found no detainer lodged against him; and (iii) the defendant was paroled, an action which implicitly informed him that he had no other charges outstanding against him. It is thus clear that he cannot be faulted for his failure to make a formal demand for a speedy trial prior to his return from Chicago. *Compare United States v. Reed, supra.*

■■ 4) PREJUDICE TO THE DEFENDANT. While Wallace concedes that the delay in his case did not impair his ability to defend himself, the State admits that the defendant suffered prejudice because he was precluded from serving his new sentence concurrently with his former sentence. This interest of the defendant has been recognized by the United States Supreme Court as follows:

> ... [D]elay in bringing [a person already in prison] to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. [Footnote omitted].

*Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607, 611 (1969). *See also Trigg v. Tennessee,* 507 F.2d 949, 955 (6th Cir.1974), in which the court recognized a criminal defendant's interest in concurrency of sentences. Thus, while we recognize that an affirmative demonstration of prejudice to the defendant is not essential to prove a denial of the right to a speedy trial, *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), we find that such an affirmative demonstration has been made here.

■■ Finally, the State urges us to consider an additional factor mentioned in *Bishop, supra,* e.g., the strength of the State's case against Wallace. While this point may be relevant to a speedy trial determination in some circumstances, it cannot be taken as controlling in this case. The constitutional requirements imposed by the United States Supreme Court in the interpretation of the Sixth Amendment's speedy trial provision represent the "law of the land." Thus, in the interpretation of its own law, a state is free to apply more stringent requirements than those laid down in *Barker v. Wingo, supra,* for the protection of a criminal defendant's rights. *See generally Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972). But in a case involving the application of a federal constitutional provision, as here, a state court may not afford any lesser degree of protection without violating the federal constitutional standard. *Oregon v. Hass, supra; Lego v. Twomey, supra.* We thus conclude that an interpretation of *Bishop* as setting up a separate balancing factor or "fifth prong," *i.e.,* the strength of the evidence against the defendant, would result in a violation of the Sixth Amendment to the United States Constitution, and, accordingly, we decline to give this consideration controlling weight in the case before us.

■ Given the totality of the circumstances presented in this case, we find that the defendant's conviction was secured in violation of his right to a speedy trial, as expressed in both state and federal law. In view of our ruling on this question, the remaining issues raised on appeal are moot.

The judgment of the trial court is reversed and the case dismissed.

O'BRIEN and SCOTT, JJ., concur.