IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1997 SESSION

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 03C01-9611-CR-00428 |
| Appellee, | ) | |
| | ) | ANDERSON COUNTY |
| VS. | ) | |
| | ) | HON. D. KELLY THOMAS, JR., |
| JAMES DAVID HARRIS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Assault with intent to commit |
| | | first-degree murder) |

FOR THE APPELLANT:     FOR THE APPELLEE:


MART S. CIZEK
245 North Main St., Suite 100
Clinton, TN   37716
   (On appeal)

TOM MARSHALL
District Public Defender
101 S. Main St.
Clinton, TN   37716
   (At trial)

JOHN KNOX WALKUP
Attorney General & Reporter

TIMOTHY F. BEHAN
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN  37243-0493

JAMES N. RAMSEY
District Attorney General

JAN HICKS
Asst. District Attorney General
Anderson County Courthouse
Clinton, TN   37716


OPINION FILED:_____


CONVICTION AFFIRMED; REMANDED
FOR RESENTENCING


JOHN H. PEAY,
Judge

## O P I N I O N

The defendant was initially convicted in 1988 of attempted first-degree murder with bodily injury. He was granted post-conviction relief in June 1991 on the basis of ineffective assistance of counsel. Following the State's appeal through our Supreme Court of that decision and appointment of a new trial judge, he was retried in November 1995 and convicted of assault with intent to commit first-degree murder.[1] After a hearing he was sentenced as a Range I standard offender to twenty-three years incarceration. In this appeal as of right, he raises the following issues:

1.      The trial court abused its discretion when it rejected his plea bargain;

2.      The four and one-half year delay between the grant of post-conviction relief and his second trial violated his right to a speedy trial;

3.      The trial court erred in its instruction to the jury about the range of his punishment for the indicted offense; and
4.      The trial court erred in sentencing him.

After our review of the record, we find no merit to the first three of the defendant's contentions. However, because the trial court erred in sentencing him, we remand this matter for resentencing.

On October 19, 1987, the defendant and the victim, his ex-wife, had a custody hearing in conjunction with their divorce. Following the hearing, the victim went

---

[1]The defendant was charged with "maliciously, deliberately and premeditatedly mak[ing] an assault upon the body of [the victim] with the felonious intent then and there to unlawfully, feloniously, maliciously, deliberately and premeditatedly to kill and murder the [victim] and to commit the crime of murder in the first degree by use of a deadly weapon, to wit: a knife, and did thereby cause bodily injury to the victim . . . all in violation of TCA 39-2-103." T.C.A. § 39-2-103 (Repl. 1982) is titled "Assault with intent to murder" and provides "(a) Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, . . . though death shall not ensue, shall, on conviction, be imprisoned in the state penitentiary for not less than five (5) nor more than twenty-five (25) years. (b) If bodily injury to the victim occurs as a result of such an assault in violation of subsection (a), the punishment shall be a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years. (c) In the case of bodily injury to the victim, the offense defined in subsection (b) of this section is a Class X felony."

2

to the offices of the pediatric dentist for whom she worked as a dental assistant. While she was preparing to treat a five-year old girl who was seated in the dental chair, the defendant entered the area and attacked the victim with a knife. He cut the victim's neck, causing a wound approximately five inches long and at least an inch deep. The dentist, hearing the commotion, came in and disarmed the defendant. The police arrived shortly thereafter.

Prior to the first trial, the State made a plea bargain offer to the defendant's attorney of aggravated assault with a sentence of five years incarceration. This plea offer was never communicated to the defendant. Upon trial, the jury convicted the defendant of attempted first-degree murder with bodily injury and he was sentenced to thirty-five years incarceration. The defendant was subsequently granted post-conviction relief on the basis that his lawyer was ineffective for failing to present the plea offer to him, and that he was thereby prejudiced. Following the State's appeals, our Supreme Court ordered "[t]he cause . . . remanded to the trial court for a hearing by a new judge in which the State is directed to reinstate its original guilty plea offer and negotiate in good faith. If accepted by defendant, the trial court may utilize its discretion to accept or reject this or any other plea agreement which may be negotiated. Otherwise, the case will stand for trial in due course." The State did as ordered, the defendant accepted the plea offer, and it was presented to a new trial judge who, after a hearing, rejected it. The defendant was then retried and reconvicted.

In his first issue, the defendant contends that the trial court abused its discretion when it rejected the plea agreement of aggravated assault with a five year sentence of incarceration. The defendant is particularly concerned with the trial court's reliance on facts which would not have been available at the time the original plea offer

3

was made. At the plea hearing, the victim testified that, following the defendant's release on bond upon his successful bid for post-conviction relief, he had harassed her over the phone and had "tried to perform oral sex" on their minor daughter. In taking the plea bargain under consideration, the trial court stated, "I think it has to be analyzed in part from the situation as it would have existed back at that time and then I think also there's a certain amount of the present facts that have to be considered in deciding what still is in the best interest of the people involved in this case and . . . the overall administration of justice and the best interest of the public." In then rejecting the plea bargain, the trial court stated:

> I would not have accepted a guilty plea to a felony like this reduced as much as this one was had the victim not come in and really persuaded me that her best interest[s] were more important than the overall interest of society in having cases such as this prosecuted if there's reasonable grounds to support the indictment. And I don't think that [the victim] back then would have been successful with that and I don't think she would have tried too hard from what I've heard her say here today.
> . . .
> [I]t is not in the best interest of society or the public that [the defendant] go back to the penitentiary and as soon as the paperwork is completed be released under no supervision. That makes him free to pursue any sort of conduct that he wants to pursue short of criminal activity and he has shown from the testimony I've heard here today that that's exactly what he intends to do. And that's not, that can't be tolerated, that's just a lesser version of the same state of mind that caused this situation to occur in the first place. I mean, it's a dangerous, dangerous thing. It shows that no real closure to this case has happened in his mind, no real rehabilitation as far as his attitude about his former wife is concerned by this whole offense. And I can't say at all that it's, would help the administration of justice or the interest of the public to take this [five] year plea. And I'm not going to.

Clearly, then, the trial court gave some consideration to events which had occurred after the defendant had been convicted in determining to reject the plea agreement. However, we do not agree with the defendant that the trial court thereby abused its discretion.

This Court has previously held that, "[b]ecause a trial court is afforded

4

discretion in the acceptance of a plea, the judgment cannot be set aside unless there has been a plain abuse of authority." Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). Moreover, "[t]o find that a trial court has abused its authority, it must appear that no substantial evidence supports the conclusion of the trial judge." Id. In the instant case, substantial evidence does support the trial court's conclusion. In response to being questioned about whether she had wanted to go through a trial initially, the victim testified that, prior to the original trial, she "really didn't know what [she] wanted to do. [She] was scared, and . . . had two small children and . . . was concerned about how they would feel." She admitted that the original plea bargain had initially been "okay" with her. No further testimony indicative of how the plea bargain would have served the victim's "best interests" was elicited, from the victim or anyone else. On the other hand, the proof available prior to the original trial was that the defendant had brutally attacked the victim at her place of employment while in the presence of a child. The trial court was concerned about the "overall interest of society" and the fact that the defendant's charge of assault with intent to commit first-degree murder had been "reduced as much as this one." That is, the trial court was concerned that the proposed plea bargain was simply too mild. Our Supreme Court has held that "[o]ne valid reason for rejecting a plea agreement is that the proposed sentence is considered too lenient under the circumstances." State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

Given the victim's less than persuasive testimony about how the plea would have served her best interests, and given the trial court's stated concern with the significant reduction of the charge, we find that the trial court did not abuse its discretion in rejecting the proposed plea agreement, irrespective of the court's consideration of post-trial facts. This issue is without merit.

5

The defendant next contends that his right to a speedy trial was violated following his successful bid for post-conviction relief. On June 3, 1991, the court which heard the defendant's petition for post-conviction relief entered an order vacating his conviction and granting relief "as specified at the postconviction hearing." On June 27, 1991, the State filed its notice of appeal from this order. This Court affirmed the post-conviction court's decision by order filed June 3, 1992. On November 30, 1992, our Supreme Court granted the State's application for permission to appeal from this Court's order. On April 18, 1994, our Supreme Court affirmed this Court on the issue of ineffective assistance of counsel and remanded the matter to the trial court as set forth above. Following the lower court's rejection of the reinstated plea bargain, the defendant's new trial began in mid-November, 1995. Thus, the defendant waited for a period of almost four and one-half years for his second trial while the State pursued its appeals.

In United States v. Loud Hawk, 474 U.S. 302 (1986), the United States Supreme Court was faced with the issue of whether delays caused by interlocutory appeals of certain pretrial decisions violated the defendant's constitutional right to a speedy trial.[2] To determine the issue, the Court adopted the four-part balancing test set forth in Barker v. Wingo, 407 U.S. 514 (1972). That test includes four factors: a) the length of the delay; b) the reason for the delay; c) the defendant's assertion of his right to a speedy trial; and d) prejudice to the defendant resulting from the delay. Id. at 530. See also State v. Bishop, 493 S.W.2d 81 (Tenn. 1973). Although Loud Hawk dealt with interlocutory appeals rather than an appeal following the grant of post-conviction (or

---

[2]The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This right has been applied to state criminal prosecutions through the Fourteenth Amendment to the U.S. Constitution. Klopfer v. North Carolina, 386 U.S. 213 (1967). The Tennessee Constitution similarly provides "That in all criminal prosecutions [by indictment or presentment], the accused hath the right to . . . a speedy public trial. . . " Art. I, Sec. 9.

habeas corpus) relief, we think the same approach is appropriate here. Thus, we analyze the defendant's claim using the Barker test.

A delay of four and one-half years is, we think, "clearly sufficient to trigger an inquiry into the remaining three factors." State v. Wallace, 648 S.W.2d 264, 266 (Tenn. Crim. App. 1980). See also Doggett v. United States, 505 U.S. 647, 652 n. 1(1992) (recognizing that a delay approaching one year "marks the point at which [lower] courts [generally] deem the delay unreasonable enough to trigger the Barker inquiry"); State v. James Sylvester Coure, C.C.A. No. 85-149-III, Perry County (Tenn. Crim. App. filed Nov. 21, 1985, at Nashville) ("delay of over three and one-half (3 ½) years from indictment to trial is unusual and requires us to examine the other three (3) factors set forth in Barker.") Thus, we must examine the reason(s) for the delay.

Most of the delay, from June of 1991 to April of 1994, resulted from the State's decision to appeal from the post-conviction court's order granting relief. The defendant contends that this appeal was "weak from the onset," "fruitless, nonmeritorious, tangential and therefore frivolous." In support of his contention, the defendant points to a letter from the assistant attorney general to the prosecuting attorney requesting her to dismiss the appeal on the grounds that, in his opinion, "pursuing an appeal on this record is futile." The State responds that the author of the letter "did not understand the two pronged analysis for ineffective assistance of counsel claims" and rhetorically asks, "if the issue is so meritless, why did our Supreme Court grant the State's Rule 11 application on the prejudice issue?"

When considering the interlocutory appeals before it in the Loud Hawk case, the Supreme Court stated that such an appeal "ordinarily is a valid reason that

7

justifies delay." 474 U.S. at 315. The Court continued: "In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and -- in some cases -- the seriousness of the crime. For example, a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous." Id. at 315-16 (citation omitted). In the case sub judice, the importance of the issue in the posture of the case was profound: unless it successfully appealed, the State lost a conviction of attempted first-degree murder and faced the unhappy prospect of having to try the defendant a second time. Likewise, the seriousness of the crime was extreme. It was undisputed that the defendant attacked the victim while at her place of employment and slit her throat, all in the presence of a five-year old child. Both of these factors weigh in favor of the reasonableness of the State's appeal.

With respect to the strength of the State's position, we respectfully disagree with both the defendant and the assistant attorney general who advised the prosecuting attorney to dismiss her appeal. As pointed out by the State, a claim of ineffective assistance of counsel involves two issues, both of which must be proved by the defendant. First, the defendant must prove that his lawyer failed to render competent legal representation. Once the defendant proves incompetence, he must then prove that the incompetent representation prejudiced him to the extent of undermining confidence in the outcome of the trial. See Strickland v. Washington, 466 U.S. 668 (1984). Obviously, the post-conviction court was satisfied that the defendant in this case had proved both prongs of the Strickland test. The State contended on appeal, however, that the post-conviction court had erred in its determination of the prejudice issue. As it states in its brief, "The State maintained that [the defendant] suffered no prejudice because the

original trial judge stated he would not have accepted the plea." That is, even if the defendant's lawyer had conveyed the plea offer to him, and even if the defendant had accepted it, the original trial court would have rejected it. Therefore, the State reasoned, the defendant lost nothing by his lawyer's mistake.

In its opinion affirming the post-conviction court's decision, this Court said simply, "Albeit implicitly, the trial judge found that Harris was prejudiced by [his lawyer's] ineffectiveness. We agree." Our Supreme Court, however, decided that this issue merited further consideration. Thus, it granted the State's Rule 11 application in order to determine, in part, "whether the petitioner established the necessary prejudice to sustain a claim of ineffective assistance of counsel." Harris v. State, 875 S.W.2d 662, 663 (Tenn. 1994). We agree with the State that the Supreme Court's grant of its Rule 11 application in order to address this very issue indicates that its appeal was neither meritless nor frivolous notwithstanding the State's eventual defeat. Nor has the defendant shown any bad faith or dilatory purpose on the part of the State in pursuing its appeal. See Loud Hawk, 474 U.S. at 316. Therefore we find that the reason for the initial period of delay was justified under the circumstances of this case.

The four and one-half year period of delay also includes a fifteen month delay between our Supreme Court's order that the original plea offer be reinstated and the eventual presentation of that offer to the new trial court. The record does not reveal the reasons(s) for this delay, but both the defendant and the State proffer the explanation that there was some difficulty in finding a judge unfamiliar with the case.

In Wallace, this Court recognized "three categories into which a delay between indictment and trial might fall: (1) deliberate attempt to delay the trial in order

9

to hamper the defense . . . ; (2) a more neutral reason such as negligence or overcrowded dockets; and (3) a valid reason, such as a missing witness, which should serve to justify appropriate delay." 648 S.W.2d at 269 (internal quotations omitted). We think the fifteen month delay in this case falls within either the second or third category. "[I]n dealing with the second category, that is, with a question of negligent delay, Tennessee law requires a determination of the <u>necessity</u> of that delay, or . . . whether it was reasonably avoidable." <u>Id.</u> (internal quotations omitted) (emphasis in original). The initial trial judge in this case recused himself upon the petition for post-conviction relief because "[he] kn[e]w, in retrospect, that [he] would have rejected the plea agreement addressed in the Post Conviction Petition and thus put the defendant to trial." Therefore, it was in the defendant's best interest to have a new judge appointed to consider the proposed plea bargain. There is no proof in the record as to why it took so long to find a judge, but we are painfully aware of the overcrowded nature of most trial courts' dockets. We find, therefore, that this delay was necessary, not reasonably avoidable, and/or for a valid reason.

The next factor is whether the defendant asserted his right to a speedy trial. He did not. However, a defendant does not waive his or her right to a speedy trial by failing to assert it. Rather, the defendant's assertion of, or failure to assert, this right is a factor in the balancing test. <u>Barker</u>, 407 U.S. at 528. Since the State has the burden of proving guilt beyond a reasonable doubt, delay will often help rather than hurt the defendant. Thus, the defendant may not necessarily want a speedy trial and may make a tactical decision not to assert his right to it. As a consequence, failure to assert the right to a speedy trial will make it difficult for the defendant to later prove that this right was denied. <u>Id.</u> at 532.

In this case, the defendant was not merely trying to avoid a speedy trial: he was trying to avoid a trial altogether because he wished to plead guilty pursuant to the original plea offer. We think his raising of the issue at this late date is a direct result of the fact that his plea bargain was rejected and he was convicted again of the indicted offense. That is, there is no indication that he wanted a speedy trial until the slow trial he eventually got resulted in a conviction and a twenty-three year sentence.[3] While we certainly do not fault his appellate attorney for raising this issue, we think the defendant's failure to raise it until appeal weighs against him under the circumstances of this case.

Finally, we must determine what, if any, prejudice the defendant suffered as a result of the delay in his second trial. He admits that his ability to conduct his defense was not impaired and that he was out on bond throughout the four and one-half year period but contends that he was prejudiced by a "cloud of anxiety accompanying the unresolved criminal charges" and by the curtailment of certain liberties as a condition of bond. Specifically, he could not leave the state and his personal associations were curtailed. However, if given the opportunity, the defendant would have pled guilty to aggravated assault pursuant to the plea offer. Hence, the cause for his anxiety was not the fear of a criminal conviction (which he wanted), but the fear that a new jury would again convict him of the more serious crime with which he was charged.

Overall, the factors when taken together weigh against the defendant's claim that his constitutional right to a speedy trial was violated. The minor prejudice he suffered while awaiting trial is outweighed by the fact that there were valid reasons to justify the delay. An important public interest was served by permitting the State to

---

[3]Indeed, the record contains an August 3, 1995, letter from the defendant to his lawyer stating, among other things, "It is my thoughts that avoiding trial is the best way for all parties involved. I have a number of ideas to keep a trial delayed for a period of time."

appeal a legitimate issue in a case as serious as this one, and the defendant's rights were protected by the effort to find an impartial judge to decide whether to accept the reinstated plea. This issue is without merit.

In this third issue, the defendant contends that the trial court erred when it instructed the jury that the punishment for assault with intent to commit first-degree murder ranged from five to twenty-five years. At sentencing, the court determined that the minimum sentence for this crime was twenty years. Thus, the defendant contends, he was "subjected to punishment not known or contemplated by his convicting jurors" and that, since the jury was "misinstructed that the actual consequences of their verdict w[ere] less severe than they actually were," the erroneous instruction "had a dramatic [e]ffect on their verdict." That is, had the jury been properly instructed, it likely would have convicted him of a lesser offense.

We think the defendant's allegation of error is misplaced. This crime was committed in 1987; the defendant was sentenced in 1995. Our Supreme Court has ruled that,

> in order to comply with the ex post facto prohibitions of the U.S. and Tennessee Constitutions, trial court judges imposing sentences after the effective date of the 1989 statute, for crimes committed prior thereto, must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two.

State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993) (emphasis added). Under the 1982 Act, the defendant was subject to "a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years." T.C.A. § 39-2-103(b)

(Repl. 1982).[4]  Under the 1989 Act, he was subject to a range of fifteen to twenty-five

years. T.C.A § 40-35-112(a)(1) (Repl. 1990).[5]  Because the defendant was entitled to the

lesser of the two sentences calculated under each act, his minimum sentence was five

years and his maximum sentence was twenty-five years. Thus, the trial court's instruction

to the jury was correct.

However, the trial court did commit error when it calculated the defendant's

sentence solely under the 1989 Act.  Therefore, this matter must be remanded for

resentencing in accordance with our Supreme Court's opinion in Pearson.[6]

The defendant also contends that the court below erred when, in calculating

his sentence under the 1989 Act, it determined the presumptive sentence to be the

midpoint of the range rather than minimum.  The court below found both enhancement

and mitigating factors.  Accordingly, the 1989 Act required the court to "start at the

minimum sentence in the range, enhance the sentence within the range as appropriate

for the enhancement factors, and then reduce the sentence within the range as

appropriate for the mitigating factors." T.C.A. § 40-35-210(e) (Supp. 1995).  As argued

by the defendant, the court below appears to have begun at the mid-range point of twenty

---

[4]The maximum sentence to which the defendant is subject under the 1982 Act is life imprisonment rather than twenty-five years because his assault with intent to commit first-degree murder resulted in bodily injury to the victim. See T.C.A. §39-2-103(b) (Repl. 1982).

[5]Assault with intent to commit first-degree murder is a Class A felony under the 1989 Act, T.C.A. § 40-35-118 (Supp. 1995), and the defendant was sentenced as a Range I offender.

[6]As pointed out in Judge Tipton's concurring opinion, it is possible that, under the 1982 Act, the trial court may find the defendant to have committed an "especially aggravated offense." See T.C.A. § 40-35-107.  If the court below finds him to have committed an especially aggravated offense, then he would receive a Range II sentence under the 1982 Act.  T.C.A. § 40-35-107(7). A Range II sentence for the crime of assault with intent to commit first-degree murder, accompanied by bodily injury, would be thirty-three years.  T.C.A. §§ 40-35-109(b),(d)(1) and (e)(2); 39-2-103(b).  Thus, if the court below determines the defendant to have committed an especially aggravated offense, then we agree with Judge Tipton that no further Pearson analysis is necessary.  However, we disagree with Judge Tipton that this Court should make the initial finding that the defendant committed such an offense..

years.  This was error.[7]  On remand, assuming the sentencing court again finds both enhancement and mitigating factors, it shall start at the minimum sentence of fifteen years when calculating the defendant's sentence under the 1989 Act.

Finally, the defendant contends that the sentencing court erred when it applied as enhancement factors under the 1989 Act that he had a history of criminal behavior and that the injuries to the victim were particularly great.[8]  See T.C.A. § 40-35-114(1) and (6) (Supp. 1995).  He contends that particularly great personal injuries to the victim are an element of the offense committed and therefore cannot be used to enhance his sentence, relying on State v. Makoka, 885 S.W.2d 366 (Tenn. Crim. App. 1994).  We disagree.  The defendant was convicted of assault with intent to commit first-degree murder.  Because the crime resulted in bodily injury -- which was both alleged in the indictment and proved at trial -- it was a Class X felony.  T.C.A. §39-2-103(c) (Repl. 1982).  The comparable offense under current law is attempted first-degree murder, a Class A felony.    T.C.A. § 40-35-110, Sentencing Commission Comments.  In Makoka, a panel of this Court ruled that the enhancement factor for serious bodily injury resulting from the defendant's actions, T.C.A. § 40-35-114(12)[9], should not be applied to an attempt to commit first-degree murder on the basis that it would constitute double enhancement.  885 S.W.2d at 374 (Tenn. Crim. App. 1994).  However, in State v. Freeman, 943 S.W.2d 25 (Tenn. Crim. App. 1996), another panel

_____

[7]Chapter 493 of the Tennessee Public Acts amended this section of the code to provide for a mid-range presumptive sentence for Class A felonies occurring on or after July 1, 1995.

[8]The title to this section of the defendant's brief also includes as error the court's application as an enhancement factor, "no hesitation when there was a high risk to others."  The defendant did not brief this factor, however, and it is therefore waived.  Ct. Crim. App. R. 10(b).  We note that the sentencing court did apply as an enhancement factor that "[t]here w[ere] risks to other individuals."  This is not an enhancement factor listed in either the 1982 or 1989 Act.  See T.C.A. §§ 40-35-111 (Repl. 1982) and 40-35-114 (Supp. 1995).  On remand, we suggest that the sentencing court set forth its findings of enhancement factors in the language of the statute.

[9]"During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim."

14

of this Court disagreed with Makoka on the basis of our Supreme Court's finding in State v. Trusty that "an attempted murder does not necessarily require either contact with the victim or bodily injury." 919 S.W.2d 305, 313 n.7 (Tenn. 1996).

In Freeman, this Court held "that because bodily injury is not an essential element of the offense of attempted second-degree murder, the trial court properly enhanced the defendant's sentence for that offense with regard to the victim who was actually wounded." 943 S.W.2d at 32. We think the same reasoning should apply in this case. The victim of an attempted murder does not necessarily suffer particularly great personal injuries. Accordingly, there is no double enhancement from the application of this factor where the victim does suffer such injuries. Therefore, if on remand the sentencing court finds that the victim in this case suffered such injuries, application of this factor would be appropriate under the 1989 Act.

With respect to calculating the defendant's sentence under the 1982 Act, it also provides for certain enhancement factors. See T.C.A. § 40-35-111(Repl. 1982). One of them is that "[t]he personal injuries inflicted upon . . . the victim [were] particularly great." T.C.A. § 40-35-111(6) (Repl. 1982). The crime of assault with intent to murder is automatically enhanced under T.C.A. § 39-2-103(b) and (c) (Repl. 1982) "[i]f bodily injury to the victim occurs as a result" of the assault. Particularly great personal injuries are significantly greater in degree than simple bodily injury. Accordingly, this enhancement factor is not a necessary element of the offense. Nor is it one of the criteria for establishing an especially aggravated offense. See T.C.A. § 40-35-107 (Supp. 1987). Therefore, we find that this enhancement factor, if supported by the proof at the resentencing hearing, may properly be applied in this case in determining the

defendant's sentence under the 1982 Act.

15

The court below also found as an enhancement factor "a history of criminal behavior." This is an enhancement factor under both the 1982 and 1989 Acts. See T.C.A. § 40-35-111(1) (Repl. 1982); T.C.A. § 40-35-114(1) (Supp. 1995). The court did not specify what this history consisted of, other than to note "[a]lso those [two misdemeanor] convictions" (emphasis added). Obviously, the court had in mind some history other than the two misdemeanor convictions, which it stated "don't weigh very heavily," but its findings are insufficient for this Court to determine whether that history was appropriately considered or not. On remand, we remind the sentencing court that it "shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any, as well as [specific] findings of fact [upon which application of the sentencing principles was based.]" T.C.A. §§ 40-35-210(f) (Supp. 1995). See also T.C.A. §§ 40-35-209(c) (Supp. 1987) ("The record of the sentencing hearing is part of the record of the case and shall include specific findings of fact upon which application of the sentencing principles w[as] based") and 40-35-210(c) (Repl. 1982) ("Whenever the court imposes a sentence, it shall place on the record either orally or in writing its findings of fact and reasons as required by § 40-35-209").

The defendant's conviction is affirmed and his sentence is vacated. This matter is remanded for resentencing in accordance with this opinion.

_____
JOHN H. PEAY, Judge

16

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
CURWOOD WITT, Judge

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1997 SESSION

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9611-CR-00428 |
| | ) | |
| | ) | Anderson County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| | ) | |
| JAMES DAVID HARRIS, | ) | (Assault with intent to commit |
| | ) | first degree murder) |
| Appellant. | ) | |

**CONCURRING OPINION**

I concur in the remand of this case, but I do not believe that further review under the Pearson guidelines is necessary. This is because the minimum sentence that could be imposed under the pre-1989 sentencing law is greater than the maximum sentence available under the 1989 Sentencing Act.

Under T.C.A. § 40-35-107(2) (repealed 1989), a Range II, especially aggravated offender is defined as one who willfully inflicts serious bodily injury upon another person. In subsection (5)(B) of section -107, serious bodily injury includes "bodily injury which involves a substantial risk of death; unconsciousness; extreme physical pain; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member or organ."

The evidence in the record reflects that the victim received a deep, five- inch cut in her neck that the treating physician called life threatening, essentially because of its depth and location. She has a permanent scar on her neck. Also, the victim had tendons cut in

18

two of her fingers, one of which remains functionally impaired. Under these circumstances and the facts surrounding the offense, I would conclude beyond a reasonable doubt that the defendant willfully inflicted serious bodily injury so as to warrant him being sentenced as a Range II, especially aggravated offender.[10]

This means that under the pre-1989 law, the defendant is exposed to a sentencing range of thirty-four years to life in prison. See T.C.A. § 39-2-103(b); 40-35-109(b), (c) and (e)(2) (repealed 1989). Thus, given the fact that the maximum sentence to which the defendant is exposed under the 1989 Act is twenty-five years, no Pearson analysis is needed. In fact, the trial court indicated that it actually did the Pearson analysis by its statement that the defendant, under the new act, was subject to "less than the minimum were he sentenced under the old act anyway."

As for the sentence that was actually imposed, the trial court found that the following enhancement factors, as listed in T.C.A. § 40-35-114, applied:

> (1) Previous history of criminal convictions or criminal behavior;
>
> (6) Infliction of particularly great personal injuries upon the victim;
>
> (9) Possession of a deadly weapon during commission of the offense; and
>
> (10) No hesitation about committing a crime when the risk to human life was high.

The trial court stated that factor (1) applied because the defendant had two old misdemeanor convictions, although it did not weigh the factor heavily. It found that factor (6) applied, not so much for the lasting injuries, but for the great risk of death that was involved according to the proof. As for factor (9), the trial court stated that it did not weigh heavily in its determinations. Finally, the trial court stated that factor (10) applied because other persons, including a child, were at risk by the defendant's assault upon

---

[10] In fact, this court affirmed the defendant's Range II, especially aggravated offender sentence in the direct appeal after the defendant's first conviction in this case. See State v. James David Harris, No. 211, Anderson County (Tenn. Crim. App. Feb. 27, 1990), app. denied (Tenn. Aug. 27, 1990).

the victim, although it indicated that these facts did not "weigh as heavily" in its consideration. The trial court also determined that his work record "weighed lightly in mitigation" and that his mental and physical condition were grounds for mitigation but did not significantly reduce his culpability. The trial court sentenced the defendant to twenty-three years as a Range I, standard offender.

As the majority opinion notes, though, the record reflects that the trial court's sentencing process began with a starting point of twenty years, not fifteen years as required by law. Thus, the presumption of correctness that attaches to trial court sentencing determinations falls and we are to review the sentencing de novo. However, the presentence report is not in the record on appeal, thereby preventing us from considering all matters required for sentencing. See T.C.A. § 40-35-210(b). Thus, I concur in the case being remanded for resentencing, with the presumptive sentence being the minimum sentence of fifteen years.

_____
Joseph M. Tipton, Judge