IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 18, 2000

## JAMES DUBOSE v. STATE OF TENNESSEE

**Appeal as of Right from the Circuit Court for Williamson County**
**No. 198-43      Donald P. Harris, Judge**

---

**No. M2000-00478-CCA-R3-CD - Filed February 1, 2001**

---

The petitioner, James DuBose, was convicted by a jury in the Williamson County Circuit Court of one count of first degree felony murder with the underlying felony being aggravated child abuse. The trial court sentenced the petitioner to life imprisonment in the Tennessee Department of Correction. This court and the Tennessee Supreme Court affirmed the petitioner's conviction. The petitioner subsequently filed a petition for post-conviction relief. After a hearing, the post-conviction court denied the petitioner's request for relief. On appeal, the petitioner raises the following issues for our review: (1) whether the State engaged in prosecutorial misconduct during the course of the petitioner's trial; (2) whether petitioner's trial counsel provided ineffective assistance of counsel; (3) whether the trial court erred in failing to give curative jury instructions; and (4) whether the petitioner was charged pursuant to a faulty indictment. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

James DuBose, Clifton, Tennessee, pro se, (post-conviction); Eugene Honea, (post-conviction) and Robert Plummer, Franklin, Tennessee (trial and direct appeal), for the appellant, James DuBose.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, Joseph Baugh, District Attorney General (trial), Ronald L. Davis, District Attorney General (post-conviction), and Jeffrey Burks, Assistant District Attorney General (post-conviction), for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

The evidence as summarized in the petitioner's direct appeal established that on the afternoon of July 3, 1993, the victim, sixteen-month-old Rufus Jones, Jr., was left in the sole care

of the petitioner, James DuBose, while the victim's mother, Ann Jones (hereinafter "Jones"), left to get a pizza and to rent a movie video. When she left, the victim was sitting at the kitchen table eating a hot dog. When Jones returned home with the movies, she discovered the victim "asleep"on the bedroom floor covered with a blanket. The petitioner told Jones that he had put the victim to bed because the victim was sleepy. During the movie, the petitioner checked on the victim and discovered that he was not breathing. Jones attempted to perform mouth to mouth resuscitation on the victim, but the victim exhibited little indication of life. The petitioner and Jones then took the victim to the hospital. At the hospital, the petitioner claimed that he had found the victim pinned between the bed and the wall. According to the petitioner, the victim had dropped his bottle and was trying to retrieve it when he was injured. Hospital staff unsuccessfully attempted to resuscitate the victim and pronounced the victim dead at approximately 9 p.m.

Dr. Julia Goodin performed an autopsy on the victim. The autopsy revealed that the victim died as a result of blunt trauma to the abdomen, consistent with trauma caused by an adult fist. Furthermore, Dr. Goodin noted bruising on the victim's abdomen which she opined could have been caused when the knuckles of the fist struck the victim. The victim also had older injuries, some of which had left internal scarring that could have contributed to the victim's death. Dr. Goodin found no indication that the victim had been pinned between the bed and the wall, and there were no signs that the victim had asphyxiated.

At trial, Jones testified that the petitioner was generally good with the children and was a substitute father. However, the petitioner's uncle, Harvey Wood (hereinafter "Wood"), testified that the petitioner hated the victim's father and the victim. Furthermore, Wood witnessed the petitioner strike the victim on one occasion. Wood also stated that the petitioner tried to get Wood to change his testimony at trial.[1]

A jury convicted the petitioner of one count of first degree felony murder with the underlying felony being aggravated child abuse. The trial court sentenced the petitioner to life imprisonment in the Tennessee Department of Correction. On direct appeal, this court and the Tennessee Supreme Court affirmed the petitioner's conviction. The petitioner subsequently filed a petition for post-conviction relief. After a hearing, the post-conviction court denied the petitioner's request for relief. On appeal, the petitioner raises the following issues for our review: (1) whether the State engaged in prosecutorial misconduct during the course of the petitioner's trial; (2) whether petitioner's trial counsel provided ineffective assistance of counsel; (3) whether the trial court erred in failing to give curative jury instructions; and (4) whether the petitioner was charged pursuant to a faulty indictment.

## II. Analysis

---

[1] For a more thorough recitation of the facts, see State v. DuBose, 953 S.W.2d 649, 650-652 (Tenn. 1997); State v. DuBose, No. 01C01-9405-CC-00160, 1995 WL 504803, at *1-7 (Tenn. Crim. App. at Nashville, August 25, 1995).

-2-

Because the petitioner initiated his post-conviction proceedings after May 10, 1995, he must prove all of his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). Unless the evidence preponderates otherwise, the post-conviction court's factual findings are binding upon this court. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). Likewise, the post-conviction court resolves all questions pertaining to the credibility of witnesses and the weight and value to be attributed to their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Additionally, we may not re-weigh or reevaluate the evidence or substitute our inferences for those drawn by the post-conviction court. Williams v. State, No. 03C01-9801-CC-00013, 1999 WL 58608, at *2 (Tenn. Crim. App. at Knoxville, February 9, 1999).

## A. Prosecutorial Misconduct

The petitioner's allegations of prosecutorial misconduct relate to audio and video tapes that the Tennessee Bureau of Investigation made of a meeting between the petitioner and Wood at a motel prior to trial. The petitioner contends that the meeting was planned so that the petitioner could persuade Wood to change his testimony.

The petitioner first alleges that the State elicited and failed to correct false testimony given by Wood at trial. The petitioner claims that Wood testified at trial that Wood had sold a stereo to pay for the motel room where the meeting occurred. The State requested a jury-out hearing at that point in Wood's testimony and informed the court that the meeting was set up by the Tennessee Bureau of Investigation. The petitioner contends that the State never corrected Wood's testimony regarding the source of payment for the motel room.

> This court has stated:
> [i]t is a well established principle of law that the state's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial as embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, §§ 8 and 9 of the Tennessee Constitution. [Moreover,] [w]hen a state witness answers questions on either direct or cross examination falsely, the district attorney general, or his assistant, has an affirmative duty to correct the false testimony.

State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993)(citations omitted). However, the false testimony must be material to entitle the accused to a new trial. Id. at 621.

Initially, we note that the source of payment for the motel room was not material. Moreover, there is no evidence in the record before us to suggest that the tapes were ever introduced as part of the State's proof against the petitioner or by the petitioner at trial.[2] Additionally, the District Attorney General testified at the post-conviction hearing that he was not aware of any testimony that was falsely given at trial. The post-conviction court found that the petitioner failed

---

[2] The petitioner failed to include the trial transcript in the record for our review.

to prove that the District Attorney General engaged in prosecutorial misconduct. We cannot conclude that the post-conviction court was in error. This issue is without merit.

The petitioner also claims that the State suppressed evidence favorable to him at trial in violation of Brady v. Maryland. The petitioner claims that he was denied his right to due process when the State failed to disclose the potentially exculpatory audio and video tapes of the meeting between the petitioner and Wood at the motel. The United States Supreme Court held in Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194,1196-97 (1963), that the State has a constitutional duty to furnish the petitioner with exculpatory evidence pertaining to the petitioner's guilt or innocence or to the potential punishment faced by the petitioner. Furthermore, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 1196-97. Moreover, the State's duty to disclose exculpatory evidence extends to evidence which may be used by the petitioner for impeachment purposes. Giglio v. United States, 405 U.S. 150, 154-55, 92 S. Ct. 763, 766 (1972).

The petitioner bears the burden of proving a Brady violation by a preponderance of the evidence. State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995). In order to prove that a Brady violation exists, the petitioner must show that: (1) the petitioner requested the information (unless the evidence is obviously exculpatory, in which case the State is obligated to release such evidence regardless of whether or not it was requested); (2) the State suppressed the information; (3) the information was favorable to the petitioner; and (4) the information was material. Id.

We note that the record reveals that the State did disclose the tapes, but delayed disclosure until Wood's testimony. This court must analyze a delayed disclosure of evidence differently than a complete nondisclosure of evidence. In fact, "if there is only a delayed disclosure of information, in contrast to a complete failure to disclose exculpatory information, Brady normally does not apply, unless the delay itself causes prejudice." State v. Hall, No. 01C01-9710-CC-00503, 1999 WL 34782, at *9 (Tenn. Crim. App. at Nashville, January 28, 1999), perm. to appeal denied, (Tenn. 1999).

Accordingly, the petitioner must establish that the delayed disclosure prevented him from using the disclosed material effectively in preparing and presenting his case. State v. Caughron, 855 S.W.2d 526, 548 (Tenn.1993)(Daughtrey,J.,dissenting)(citing United States v. Ingraldi, 793 F.2d 408,411,412 (1st Cir. 1986)). Moreover, if the petitioner failed to move for a continuance after receiving the information, thoroughly cross-examined the witness regarding the evidence, or failed to call or recall an available witness concerning the exculpatory statements, the potential Brady violation may be cured. See id., State v. Ewing, No. 01C01-9612-CR-00531, 1998 WL 321932, at *9 (Tenn. Crim. App. at Nashville, June 19, 1998), opinion vacated and reentered by State v. Ewing, No. 01C01-9612-CR-00531, 1998 WL 485614, at *1 (Tenn. Crim. App. at Nashville, August 18, 1998).

This court previously addressed this issue on direct appeal. We stated:

[w]e point out that this recorded statement was not introduced into evidence against the [petitioner]. As soon as the trial court learned of its existence, the court ordered the [petitioner] to have access to the recording and further volunteered additional time if necessary to evaluate and respond to the recording. The [petitioner] did not argue at trial that any additional time was needed for further investigation or research. While it is clear that the [petitioner] was entitled, as continuing discovery, to have a copy of the statement, because the statement was not used in any way, we are unable to conclude that the [petitioner's] right to a fair trial was in any way prejudiced by the failure of the State to advise the [petitioner] in advance of the recorded statement.

State v. DuBose, No. 01C01-9405-CC-00160, 1995 WL 504803, at *11 (Tenn. Crim. App. at Nashville, August 25, 1995). "A matter previously determined is not a proper subject for post-conviction relief." Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). Furthermore, "[a] ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-206(h) (1997). Accordingly, because we have previously determined this issue, we will not now reconsider our decision. See Cole v. State, 798 S.W.2d 261, 264-65 (Tenn. Crim. App. 1990).


### B. Ineffective Assistance of Counsel

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, our review of this issue is de novo. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a cognizable claim of ineffective assistance of counsel, the petitioner must demonstrate two things:

First, the [petitioner] must prove that his lawyer failed to render competent legal representation. Once the [petitioner] proves incompetence, he must then prove that the incompetent representation prejudiced him to the extent of undermining confidence in the outcome of the trial.

State v. Harris, 978 S.W.2d 109, 114 (Tenn. Crim. App. 1997); see also Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In determining whether or not counsel's performance was deficient, the applicable test is whether counsel's performance was within the range of competence required of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

The petitioner claims that his trial counsel was ineffective because he failed to more aggressively cross-examine Jones and Wood. Particularly, the petitioner contends that his trial counsel should have cross-examined Wood about his statements concerning Wood's meeting with the petitioner at the motel. Petitioner's trial counsel testified at the post-conviction hearing that, while the video tape of the meeting showed that the petitioner told Wood that the petitioner could not advise Wood to change his testimony, the tape also showed that the petitioner made the statement

while searching the room in a suspicious manner, as if looking for recording devices. Trial counsel maintained that he was afraid of the impact that might be made on the jury upon witnessing the video.[3] Therefore, as part of his trial strategy, petitioner's trial counsel chose not to pursue this avenue. This court has stated that, "[w]hen reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics." Irick v. State, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998).

Additionally, the petitioner claims that his trial counsel should have more aggressively cross-examined Jones concerning her alleged abuse of the victim. Trial counsel testified that he was pleased with the cross-examination of Jones. This court has noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). Accordingly, the petitioner has failed to prove ineffective assistance of counsel on this basis. See Jackson v. State, No.01C01-9412-CR-00427, 1995 WL 747843, at *10 (Tenn. Crim. App. at Nashville, December 19, 1995).

The petitioner also alleges that his trial counsel failed to call witnesses that would have testified to facts suggesting that Jones or Wood could have killed the victim. However, the petitioner did not present any of these witnesses at the post-conviction hearing. The petitioner's own testimony was the only evidence introduced by the petitioner at the post-conviction hearing. This court has stated:

> [w]hen [a petitioner] contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the [petitioner] at the evidentiary hearing. As a general rule, this is the only way the [petitioner] can establish that (a) a material witness existed who could have been discovered but for counsel's neglect in the investigation of the case; (b) a known witness was not interviewed; (c) the failure to discover or interview a witness inured to his prejudice; and (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the [petitioner].

Holt v. State, No. M2000-00163-CCA-R3-PC, 2000 WL 1612352, at *3 (Tenn. Crim. App. at Nashville, October 30, 2000). Additionally, "[n]either the trial court nor this court may speculate as to what [the witnesses'] testimony may have been." Id. In the instant case, "because none of the witnesses testified at the hearing, the petitioner was simply unable to show prejudice." Thompson v. State, 958 S.W.2d 156, 164 (Tenn. Crim. App. 1997); see also Meeks v. State, M1998-00791-CCA-R3-PC, 2000 WL 235825, at *6 (Tenn. Crim. App. at Nashville, March 3, 2000). This issue is without merit.

---

[3] We note that the petitioner has failed to include a copy of either the video or audio tape of this meeting between the petitioner and Wood.

The petitioner also complains that his trial counsel failed to obtain statements by Jones and Wood prior to trial. As the post-conviction court noted,

> [i]t is unclear whether petitioner objected to his trial attorney's failure to interview these witnesses or whether her feels his attorney should have made an effort to obtain written statements in the possession of the state prior to trial.

In either case, the petitioner has failed to prove that counsel was ineffective. First, the petitioner failed to prove that the State possessed any statements that the petitioner could have obtained prior to trial. Regardless, the petitioner would not have been entitled to this information until after the witness had testified at trial. See Tenn. R. Crim. P. 26.2. Additionally, petitioner's trial counsel testified that he made several efforts to interview Jones and other witnesses prior to trial. We agree with the post-conviction court that the petitioner failed to prove that his trial counsel was ineffective by failing to obtain the statements prior to trial.

### C. Jury instructions

The petitioner claims that the trial court erred by instructing the jury on the length of the sentence that the petitioner would receive for each offense with which he was charged. The petitioner argues that if the jury had not been so instructed, the jury would have convicted him of a lesser offense. However, the petitioner has failed to include a copy of the trial transcript or the jury instructions in the record for our review. Because the burden is on the petitioner to provide a record for our review, his failure to do so is considered a waiver of the issue. Tenn. R. App. P. 24. Additionally, we note that the petitioner did not raise this issue before the post-conviction court. We have stated that "[i]ssues not presented in the petition for post-conviction relief cannot be raised on appeal unless they have been fully litigated at the trial court level." Gribble v. State, Nos. 02C01-9303-CC-00039 and 02C01-9303-CC-00045, 1995 WL 46379, at *5 (Tenn. Crim. App. at Jackson, February 8, 1995).

The petitioner also contends that the trial court erred in failing to instruct the jury that evidence of the victim's prior injuries was admissible for the sole purpose of proving intent and lack of accident. We again note that the petitioner did not include the trial transcript with the record on appeal. Tenn. R. App. P. 24. Accordingly, we are unable to determine the content of the instructions given by the trial court. Additionally, this issue should have been resolved in the petitioner's direct appeal. Tenn. Code Ann. § 40-30-206(g) provides that

> [a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

The petitioner has failed to set forth the reasons for his failure to raise this issue on direct appeal. Accordingly, for the foregoing reasons, we conclude that the petitioner has waived this issue. See Forrest, 535 S.W.2d at 167.

### D. Indictment

Finally, the petitioner argues that, due to a faulty indictment, the trial court did not have jurisdiction over him in his original trial. We observe that the petitioner has not included the indictment in the record for our review. This court has found that "when challenging the sufficiency of an indictment, the failure of a petitioner to include a copy of the indictment in the record precludes both the trial court and this Court from addressing the merits of the argument." Jackson v. State, No.03C01-9904-CC-00164, 2000 WL 66090, at *1 (Tenn. Crim. App. at Knoxville, January 27, 2000); see also Tenn. R. App. P. 24(a); State v. Hopper, 695 S.W.2d 530, 537 (Tenn. Crim. App. 1985). Accordingly, the petitioner has also waived this issue.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE