# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 15, 2000

## ARCHIE LEE ROBERTS v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for DeKalb County**
**No. 7524F     Leon Burns, Jr., Judge**

---

### No. M1999-02462-CCA-R3-PC - Filed April 12, 2001

---

The petitioner, Archie Lee Roberts, was found guilty by a jury in the DeKalb County Criminal Court of one count of first degree murder, for which he received a life sentence, and one count of attempted first degree murder, for which he received a sentence of twenty years incarceration. On direct appeal, we affirmed the petitioner's convictions. Subsequently, the petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel, which petition was denied by the post-conviction court. On appeal, the petitioner raises the following issue for our review: whether the post-conviction court erred in denying his claim for relief. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Tecia Puckett Pryor (post-conviction), Smithville, Tennessee, and Terry D. Dycus (trial and direct appeal), Cookeville, Tennessee, for the appellant, Archie Lee Roberts.

Michael E. Moore, Solicitor General, Clinton J. Morgan, Counsel for the State, William Edward Gibson, District Attorney General, and William M. Locke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On April 28, 1993, while riding around and drinking together, the petitioner, Archie Lee Roberts, got into an argument with Eric Graham and Shane Orlando.[1] The petitioner pulled a

---

[1] We gleaned the facts underlying the petitioner's convictions from our opinion concerning this case on direct

(continued...)

knife on Orlando, but Orlando was able to take the knife from the petitioner. Upon arriving at the petitioner's residence, the petitioner requested the return of his knife. Immediately after Orlando returned the knife, the petitioner stabbed Orlando in the stomach causing a severe wound.

The petitioner then entered his house and kicked in his mother's locked bedroom door. He obtained a 12-gauge shotgun and shotgun shells, and he loaded the gun. Once outside, the petitioner resisted his stepbrother's attempts to restrain him, and he shot Graham in the head and in the shoulder. The petitioner then shot at Orlando but did not hit him. After Orlando begged the petitioner to permit him to get medical help for Graham, the petitioner allowed Orlando to leave with Graham. The petitioner subsequently called 911 and made a coherent request for assistance. He also bragged to the neighbors about "kill[ing] a boy that was in the yard." Graham died as a result of his head wound and Orlando was hospitalized for nine days.

The petitioner was found guilty by a jury of one count of first degree murder and one count of attempted first degree murder. Due to the petitioner's youth, the State was unable to seek the death penalty for the petitioner's first degree murder conviction. Accordingly, the trial court sentenced the petitioner to life imprisonment for the first degree murder conviction and to twenty years in the Tennessee Department of Correction for the attempted first degree murder conviction and ordered that the sentences be served consecutively. State v. Archie Lee Roberts, No.01C01-9603-CC-00082, 1997 WL 34425, at *1-2 (Tenn. Crim. App. at Nashville, January 30, 1997).

The petitioner appealed his case to this court on direct appeal, and we affirmed his convictions. Subsequently, the petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel. The post-conviction court denied the petitioner's claim for relief, finding that the petitioner had not established that the petitioner's trial counsel had been ineffective or that the petitioner had been prejudiced by counsel's actions. On appeal, the petitioner raises the following issue for our review: whether the post-conviction court erred in denying the petitioner's claim for relief.

## II. Analysis

Because the petitioner initiated his post-conviction proceeding after May 10, 1995, he must prove all of his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Unless the evidence preponderates otherwise, the post-conviction court's factual findings are binding upon this court. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). Likewise, the post-conviction court resolves all questions pertaining to the credibility of witnesses and the weight and value to be attributed to their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Moreover, we may not re-weigh or reevaluate the evidence or substitute our inferences for those drawn by the post-conviction court. Owens v. State, 13 S.W.3d 742, 749

[1](...continued) appeal. See State v. Archie Lee Roberts, No. 01C01-9603-CC-00082, 1997 WL 34425, at *1-2 (Tenn. Crim. App. at Nashville, January 30, 1997). The petitioner failed to include a transcript of the trial or the sentencing hearing with the record for our review.

(Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn.), cert. denied, __ U.S. __, 121 S. Ct. 116 (2000).

A claim of ineffective assistance of counsel is a mixed question of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, a post-conviction court's findings of fact are subject to a de novo review; however, we must accord those factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Jehiel Fields v. State, __ S.W.3d __, E1999-00915-SC-R11-PC, 2001 WL 166380, at *4 (Tenn., February 20, 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review by this court with no presumption of correctness. Id. at *5.

To establish ineffective assistance of counsel, the petitioner must demonstrate two things:

> First, the [petitioner] must prove that his lawyer failed to render competent legal representation. Once the [petitioner] proves incompetence, he must then prove that the incompetent representation prejudiced him to the extent of undermining confidence in the outcome of the trial.

State v. Harris, 978 S.W.2d 109, 114 (Tenn. Crim. App. 1997); see also Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). The petitioner must establish both factors in order to be entitled to relief. Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). In determining whether or not counsel's performance was deficient, the applicable test is whether counsel's performance was within the range of competence required of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice,

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Specifically, the petitioner alleges that his counsel was ineffective for failing to introduce any mitigating evidence at his sentencing hearing. The petitioner contends that his trial counsel should have introduced evidence of his "horrific childhood and emotional problems" through the testimony of his sister, Debra Cunningham, and a psychiatrist, Dr. Barry Nurcombe.

> Cunningham testified at the post-conviction hearing that [the petitioner's] dad. . . shot at our mother and just barely missed her. His dad locked us out of the house lots of times. . . not just a short time. . . . [The petitioner's] dad held a sharp-pointed scissors to his throat. In fact, you know, made a face in there and told him that he was going to kill him if he didn't come with him. And at that

point he had kidnapped [the petitioner] and his brother from my mother.

Cunningham stated that, following these incidents during the petitioner's youth, the petitioner experienced a drastic change in his personality, becoming very withdrawn. Additionally, regarding the petitioner's temper, Cunningham acknowledged that "either something occurs several times or just over a period of time of making him very angry before he would show his temper at all, and then it would be in an explosion." Cunningham maintained that she was present at the petitioner's trial and sentencing hearing and would have been willing to testify at both proceedings.

At the post-conviction hearing, the petitioner acknowledged that the only expert witnesses available to testify on his behalf were the psychiatrists and the psychologist who had examined him: Dr. James Machum, Dr. Dolorosa B. Yap, and Dr. Barry Nurcombe. However, on appeal, the petitioner only complains about his trial counsel's failure to call Dr. Nurcombe. The petitioner also admitted at the post-conviction hearing that he did not remember much of his childhood before the age of eight or nine. Specifically, the petitioner testified, "I've seen a few people get shot, and that's about it."

In analyzing claims of ineffective assistance during sentencing, our supreme court has asserted that, even in the capital context, "there is no requirement that counsel present mitigating evidence during the sentencing phase of trial." Zagorski v. State, 983 S.W.2d 654, 657 (Tenn. 1998). Furthermore, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. Specifically, this court has previously found that

[d]eference is made for *sound* trial strategy. However, this deference to tactical choices only applies if the choices are informed ones based upon adequate preparation.

Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (emphasis in original).

Initially, we note that petitioner's trial counsel testified that "our office put in over 200 man hours on this case." Specifically, petitioner's trial counsel testified that during his thorough investigation of the petitioner's case, he or members of his office spoke often with psychiatrists, a psychologist, the petitioner's friends from school, and the petitioner's family. Trial counsel stated that he frequently consulted with the other more experienced attorneys in his office regarding the petitioner's case because he grew to like the petitioner and wanted to achieve the best outcome possible. The petitioner admitted that his trial counsel discussed the case and various aspects of the trial strategy with him. A review of the record clearly establishes that trial counsel adequately prepared for the petitioner's trial and sentencing hearing. The post-conviction court specifically noted that "[c]ounsel did the best they could with what they had."

The petitioner claims that, if Dr. Nurcombe had testified at the sentencing hearing concerning the petitioner's difficult childhood, the trial court would have had a basis for further mitigation of the petitioner's sentences. However, we note that, at the post-conviction hearing, the petitioner failed to present any testimony from Dr. Nurcombe or any expert concerning the

-4-

information which he alleges should have been presented at the sentencing hearing. Accordingly, this court may not speculate about the evidence that Dr. Nurcombe may have presented. Black, 794 S.W.2d at 757.

Additionally, the petitioner's trial counsel testified at the post-conviction hearing that there were strategic problems with calling Dr. Nurcombe. Specifically, trial counsel testified that he did not call Dr. Nurcombe to testify because there were problems with Dr. Nurcombe's credibility. Counsel explained that Dr. Nurcombe consistently testified for the defense and had never testified on behalf of the State, the doctor was not certified in the United States, and General Gibson "ate [Dr. Nurcombe's] lunch" during deposition and wanted the defense to call the doctor. Trial counsel concluded that Dr. Nurcombe's testimony would not necessarily be beneficial to the petitioner. This court may not review the trial strategy of an attorney. See Cooper, 847 S.W.2d at 528. The petitioner's trial counsel made a well-reasoned, strategic decision not to call Dr. Nurcombe on the petitioner's behalf. Moreover, the petitioner's trial counsel attempted to offer a videotaped deposition of Dr. Nurcombe into evidence at the sentencing hearing. Accordingly, the petitioner has failed to prove that his trial counsel was ineffective for failing to call Dr. Nurcombe.

Again, the petitioner also contends that his trial counsel rendered ineffective assistance by failing to call his sister, Debra Cunningham, to testify regarding his difficult childhood. Cunningham testified at the post-conviction hearing that, as a youth, the petitioner was kidnapped by his father, witnessed his father shoot at his mother, and watched his father abuse his mother. She testified that the petitioner became withdrawn and developed an explosive temper as a result of the his difficult childhood. The petitioner contends that the trial court would have further mitigated his sentences if this evidence had been introduced at the sentencing hearing.

> We note that
> [t]he trial judge had no discretion as to the first degree murder conviction as life imprisonment was the only possible punishment due to the [petitioner's] age. The range of punishment for attempted first degree murder as a Standard Offender is a minimum of fifteen (15) years and a maximum of twenty-five (25) years. The trial judge sentenced the [petitioner] in the middle of the range.

Roberts, No. 01C01-9603-CC-00082, 1997 WL 34425, at *3. The trial court enhanced the petitioner's sentence because "the victim's personal injuries from the stab wound were particularly great," and "the [petitioner] employed a deadly weapon during the commission of the offense." Id.; see also Tenn. Code Ann. § 40-35-114(6) and (9) (1997). The trial court further applied the following mitigating factors to the petitioner's sentence: (3) substantial grounds existed tending to excuse or justify the petitioner's criminal conduct, though failing to establish a defense; (6) the petitioner, because of his youth, lacked substantial judgment in committing the offense; and (8) the petitioner was suffering from a mental condition that significantly reduced his culpability. Id.; see also Tenn. Code Ann. § 40-35-113 (1997). Applying these enhancement and mitigating factors, the trial court sentenced the petitioner to twenty years incarceration for attempted first degree murder. See Tenn. Code Ann. § 39-11-117(a)(2) (1997); 40-35-112(a)(1) (1997).

-5-

Given the extremely violent nature of the petitioner's crimes and the fact that the petitioner did not dispute his guilt of those crimes, the petitioner has failed to show how additional information regarding his childhood would have provided a basis for further mitigation. The trial court considered the petitioner's youth, his lack of judgment, and a mental condition that significantly reduced his culpability. There is no evidence that, had additional testimony been presented, the result of the proceeding would have been different. Accordingly, we find that the petitioner has failed to establish that his trial counsel was ineffective. Even if trial counsel was ineffective at the sentencing phase, the petitioner has nevertheless failed to demonstrate how this failure prejudiced him. See Goad, 938 S.W.2d at 370.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE